STATE v. JOHN EARL COX, JR.

(Filed 11 October, 1967.)

**1. Criminal Law § 43—**

A witness may use a blackboard sketch to illustrate his testimony as to the *locus* of the crime, and the failure to sufficiently identify the sketch as an accurate portrayal of the scene is not prejudicial when the sketch was drawn in view of the jury without objection and when the court subsequently instructed the jury that the sketch was for illustrative purposes only.

**2. Rape § 4—**

Testimony that the prosecutrix exclaimed that the defendant "was trying to rape me", such remark being made to officers immediately upon

their arrival at the scene of the offense, *held* competent as part of the *res gestœ*, it appearing that the statement was spontaneous and practically contemporaneous with the offense.

APPEAL from *McLaughlin, J.,* December 5, 1966 Conflict Session "C" of MECKLENBURG.

Defendant was prosecuted under bill of indictment charging the capital felony of rape.

The State's evidence tends to show that two witnesses, Arthur Gordon Blue and Dorothy McManus, were sitting in an automobile in a driveway leading from E. Ninth Street in Charlotte on the night of 21 August, 1966. Around midnight, they observed defendant and prosecutrix, Ponsie Lee Chapman, standing on the sidewalk on the opposite side of E. Ninth Street, talking in a loud manner. Defendant began pulling prosecutrix by her arm and she fell. Defendant picked her up and carried her to a wooded area back from E. Ninth Street, despite her screams and protests. Blue then went into his house and called the police. A few minutes later, four police officers arrived at the scene.

Police Officer L. E. Lewis testified that he and the other police officers went into the wooded area. As they approached, defendant jumped up from the ground and ran. After a short chase, the police officers apprehended defendant and returned him to the wooded area where he and the prosecutrix were first observed. She was bleeding from the mouth and was in a hysterical condition.

On direct examination of police officer Lewis, the following colloquy occurred.

"Q. All right, now I will ask you, sir, to please go ahead and indicate on the board everything that's shown by that sketch that you hold there in your hand.

(Whereupon witness did as directed.)

Q. Officer Lewis, does this sketch that you put on the blackboard, here, now represent the same sketch that you made on the scene that night that you now hold here in your hand?

A. Yes, sir, it does, as near as I can tell.

Q. Officer Lewis, when you arrived on the scene there, I will ask you to describe the general scene referring to this sketch, and point out what you did and what happened while you were there, using this sketch on the blackboard to illustrate your testimony.

Objection — Overruled — Exception.

A. All right.

COURT: Well, ladies and gentlemen, this sketch is permitted for the purpose of illustrating the witness' testimony, and for no other purpose, and you will not consider it as substantive evidence."

Ponsie Lee Chapman testified, in substance, that she was twelve years old; that on 21 August 1966 at about nine o'clock P.M. she saw the defendant for the second time on the corner of Ninth and Davidson Streets. Defendant wanted to see his son, who was at Lee Smith's house, and she accompanied him there. After she and defendant left Smith's house, they went down E. Ninth Street, and she stopped on the sidewalk. Defendant urged her to "come on," but she resisted. He then pulled her by her arm and she slipped and fell. Defendant picked her up and carried her into the wooded area and threw her on the ground. She resisted defendant and continued to scream. Defendant put a handkerchief in her mouth and hit her in the mouth and side. He then had intercourse with her. She stated that when the police officers came to the wooded area, defendant jumped up and ran. During her examination she was asked what she told the police officers, and she replied: "I told them he was trying to rape me. I told them he was raping me, exactly."

The prosecuting witness was taken to the hospital and examined by Dr. David Sandridge, who testified that his examination revealed live male sperm in her vagina.

The State offered other cumulative and corroborating testimony.

Defendant testified that Ponsie Lee Chapman had provoked a scuffle with him and that she began screaming "rape"; that he had thrown her to the ground and was reaching down to pick up his hat when the police arrived. He denied having intercourse with her. He also offered other witnesses whose testimony tended to corroborate portions of his testimony.

The jury found defendant guilty of assault with intent to commit rape. Defendant appealed.

*Attorney General Bruton and Deputy Attorney General McGalliard for the State.*

*T. O. Stennett for defendant.*

PER CURIAM. Defendant assigns error in that the court overruled his objection to the State's witness using a blackboard sketch to illustrate his testimony.

"A witness may use a map or diagram, a photograph or a model of a place or a person or an object, to illustrate his testimony and make it more intelligible to the court and jury. It

must of course be identified as portraying the scene with sufficient accuracy." Stansbury: North Carolina Evidence, Witnesses, Sec. 34, p. 64.

Admittedly, the State had not sufficiently identified the sketch when the officer was asked to use it to illustrate his testimony. However, the sketch had been drawn upon the blackboard in view of the jury, without objection, and when objection was interposed the court properly instructed the jury that it was to be used for illustrative purposes and was not to be considered as substantive evidence. All of the State's evidence was to the effect that the alleged crime took place in a wooded area near E. Ninth Street in the City of Charlotte. There were six eyewitnesses who placed the defendant there, and defendant admitted in his own testimony that he was in the area with the prosecuting witness at the time the crime was alleged to have taken place. It is apparent that any confusion or prejudice that might have been caused by the sketch was removed by cross-examination of the witness.

". . . The admission of incompetent evidence will not be held prejudicial when its import is abundantly established by other competent testimony." *Bullin v. Moore,* 256 N.C. 82, 122 S.E. 2d 765.

We find no prejudicial error as to this assignment of error.

It was not error to allow the prosecuting witness to testify as to what she told the officers when they arrived on the scene immediately after defendant was taken into custody.

In the case of *Coley v. Phillips,* 224 N.C. 618, 31 S.E. 2d 757, this Court stated:

"For a declaration to be competent as part of the *res gestæ,* at least three qualifying conditions must concur: (a) The declaration must be of such spontaneous character as to be a sufficient safeguard of its trustworthiness; that is, preclude the likelihood of reflection and fabrication; . . . instinctive rather than narrative; . . . (b) it must be contemporaneous with the transaction, or so closely connected with the main fact as to be practically inseparable therefrom; . . . and (c) must have some relevancy to the fact sought to be proved."

And in 29 Am. Jur. 2d, Evidence, § 719, p. 788, we find the following:

"Statements of the victim of a sex crime made within a few minutes after commission of the offense will ordinarily be re-

garded as part of the *res gestæ*, assuming, of course, the absence of circumstances indicating a lack of spontaneity."

Here, there was evidence that the 12-year old prosecutrix was "hysterical and crying" when she made the challenged statement immediately after the commission of the offense and at the scene of the offense. Her statement was a spontaneous declaration of a relevant fact which was practically a part of the occurrence.

We have considered the other assignments of error and prejudicial error has not been made to appear.

No error.