STATE OF NORTH CAROLINA v. TOMMY LEE YANCEY

No. 149

(Filed 31 January 1977)

1. Criminal Law § 66— illegal pretrial confrontation — in-court identifi-- cation — when allowed

The in-court identification of a witness who took part in an illegal pretrial confrontation must be excluded unless it is first determined by the trial judge on clear and convincing evidence that the in-court identification is of independent origin and thus not tainted by the illegal pretrial identification procedure.

State v. Yancey

2. **Criminal Law § 66— illegal pretrial confrontation — in-court identification not tainted**

Though the pretrial single exhibition of defendant to a rape victim was unnecessarily suggestive, the determination by the trial court that the victim's in-court identification of defendant was based on her observation of him at the crime scene and was not tainted by any suggestion during the pretrial exhibition was supported by competent evidence where such evidence tended to show that the victim observed defendant for 30 minutes in her partially lighted dwelling, for 2 to 5 minutes as she sat beside him in a car, and for a few minutes as he obtained gas at a brightly lighted gas station; the victim had previously seen defendant while in high school and had located two of his pictures in her high school annual on the same night she was attacked; and the victim had observed defendant several days before the rape when he came to her trailer, asked for a ride, and inquired if there were any dogs about.

3. **Rape § 5— second degree rape — force used — sufficiency of evidence**

Evidence in a second degree rape prosecution was sufficient to show that the alleged carnal knowledge of the prosecuting witness was consummated by force where it tended to show that defendant and another black man entered the victim's trailer while she was asleep, awakened her, went with her to a gas station, returned to her trailer and began to fondle her and remove her clothes; the victim began to cry and begged the men not to harm her; the defendant instructed the victim to be quiet or she would get hurt; defendant and his companion forced the victim to have intercourse with them; and the victim stated that she was afraid for her life and for that of her infant daughter who was in the same room at the time of the crime.

4. **Criminal Law § 128— mistrial — discretionary matter**

A motion for mistrial in a case less than capital is addressed to the trial judge's sound discretion and his ruling thereon is not reviewable without a showing of gross abuse.

5. **Criminal Law §§ 128, 169— motion for mistrial — denial proper**

In a first degree burglary and second degree rape case the trial court did not err in denying defendant's motion for mistrial since any possible prejudice to defendant resulting from various answers of witnesses was cured when the court allowed defense counsel's motions to strike and instructed the jury to disregard the answers.

6. **Criminal Law § 169— evidence improperly stricken — error beneficial to defendant**

Error of the trial court in striking testimony of a rape victim that, immediately after the alleged rape, she went to her parents' home and told them "that two black men had broke in on me and raped me" was beneficial to defendant, since the testimony was not a legal conclusion but was admissible both as a shorthand statement of fact and as part of the *res gestae*.

7. **Criminal Law § 71; Rape § 4— testimony as to oral sex — shorthand statement of fact**

Testimony by a rape victim that defendant's companion "made me have oral sex with him" while defendant was committing the act of rape upon her was admissible as a shorthand statement of fact, and was relevant and admissible to show that the prosecuting witness did not consent to have sexual intercourse with defendant.

APPEAL from *Preston, J.,* 10 May 1976 Session of ALAMANCE Superior Court.

Defendant was tried upon bills of indictment charging him with first-degree burglary and the second-degree rape of Rebecca Karen Toney. The charges were consolidated for trial.

The jury returned verdicts of guilty of second-degree rape and guilty of non-felonious breaking and entering. The trial judge consolidated the cases for judgment and imposed a sentence of life imprisonment.

The facts will be more fully set forth in our consideration of the questions presented by this appeal.

*Attorney General Edmisten, by Associate Attorney David S. Crump, for the State.*

*James K. Roberson for defendant.*

BRANCH, Justice.

Defendant assigns as error the action of the trial judge in denying his motion to suppress the in-court identification of defendant by the prosecuting witness, Rebecca Karen Toney Pleasant. On 5 April 1976, defendant filed a pretrial motion to suppress statements made to police officers by defendant and to suppress identification testimony from the prosecuting witness or any other persons participating in identification procedures conducted by the Alamance County Sheriff's Department on 27 February 1976. The motion was supported by defendant's affidavit to the effect that he was exhibited to the prosecuting witness singly. He averred that there was no lineup and that he was the only black person in the room, the other occupants of the room being the prosecuting witness and a white detective. He further stated that he was without counsel and did not participate in this identification procedure with knowledge of its legal consequences.

At the pretrial hearing on defendant's motion to suppress, the sole witness was Rebecca Karen Toney Pleasant who testified that on the night of 26 February 1976 her name was then Rebecca Karen Toney. Since that time she had obtained a divorce and had married a Mr. Pleasant. She testified that on 26 February 1976, she was living in a two-bedroom trailer with her two-year-old daughter Leann. On that night she retired at about 11:15 and was later awakened by a "nudge." She observed two black men standing over her. She thereafter left the trailer with the two men and went to a well-lighted service station where defendant obtained some gas. They returned to her home where the two men remained for about thirty minutes. She was in the presence of the two men for about 45 minutes. Later that night she told Detective McPherson what had happened to her and specifically told him "that she had seen this person (defendant) somewhere before." She was taken to a hospital and upon returning home, she looked through her high school annuals and recognized defendant Tommy Lee Yancey in two of them.

On 28 February 1976, she went to the police station where Detective McPherson told her to go to a certain room "to look at someone." She stated that she knew the officers wanted her to look at a person that they thought was in her home in the early morning hours of 27 February 1976. When she went to the indicated room the only person there was defendant and a white detective. She recognized and identified defendant as one of her assailants within five or six seconds. At the hearing, she positively identified defendant as the man who raped her. On cross-examination the witness stated that she gave the police a description of defendant for the purpose of making a composite drawing. She stated that at that time she was not absolutely sure "that defendant was the man who entered her home." She said, "I was sure but I was not really sure in my mind. I did not want to blame somebody else for something." On redirect examination she said that the lights were not on in her trailer but that the utility lights on the outside furnished ample light to permit her to walk around without using the inside lights.

After finding facts consistent with the evidence above stated, the trial judge found and concluded:

That there is clear and convincing evidence that the witness's identification of the defendant in the courtroom

this day is based on her observation of the alleged person in and out of the trailer on the night of February 25 and the early morning of February 26, 1976; that she had adequate opportunity to observe the defendant for a period of at least forty-five minutes, and her in-court identification is not tainted by any suggestion when she saw him at the Sheriff's Office at a later hour on the same day.

Now therefore the motion to suppress the testimony and in-court identification of the defendant by this witness is denied.

At trial the State did not offer any evidence of a confession or as to the pretrial identification proceedings. We, therefore, are only concerned with the admissibility of the in-court identification testimony.

[1] The overwhelming weight of authority is that the in-court identification of a witness who took part in an illegal pretrial confrontation must be excluded unless it is first determined by the trial judge on clear and convincing evidence that the in-court identification is of independent origin and thus not tainted by the illegal pretrial identification procedure. *United States v. Wade,* 388 U.S. 218, 18 L.Ed. 2d 1149, 87 S.Ct. 1926; *Gilbert v. California,* 388 U.S. 263, 18 L.Ed. 2d 1178, 87 S.Ct. 1951; *Wong Sun v. United States,* 371 U.S. 471, 9 L.Ed. 2d 441, 83 S.Ct. 407; *State v. Henderson,* 285 N.C. 1, 203 S.E. 2d 10; *State v. Shore,* 285 N.C. 328, 204 S.E. 2d 682; *State v. Bass,* 280 N.C. 435, 186 S.E. 2d 384.

Unconstitutionally obtained evidence is excluded by our courts as an essential to due process and the recognized test as to the admissibility of evidence concerning pretrial identification procedures is whether the totality of the circumstances reveals pretrial procedures so unnecessarily suggestive and conducive to irreparable mistaken identification as to offend fundamental standards of decency, fairness and justice. *Foster v. California,* 394 U.S. 440, 22 L.Ed. 2d 402, 89 S.Ct. 1127; *Stovall v. Denno,* 388 U.S. 293, 18 L.Ed. 2d 1199, 87 S.Ct. 1967; *State v. Haskins,* 278 N.C. 52, 178 S.E. 2d 610.

We noted in *State v. Henderson, supra,* that these due process requirements have been enlarged by court decisions which require the presence of counsel at lineups or showups conducted after the initiation of adversary, judicial proceedings. *Kirby v.*

*Illinois,* 406 U.S. 682, 32 L.Ed. 2d 411, 92 S.Ct. 1877. In *Henderson* we held that the confrontation had not reached this critical stage, noting, *inter alia,* that the only showing of adversary procedures was that a warrant was served on the defendant on the same day of the confrontation. We there concluded that it was reasonable to infer that the warrant was served *after* the confrontation between the witness and the defendant. Instant case differs in that here defendant was in custody upon a warrant which was issued on the day preceding the single exhibition of defendant to the witness.

Our courts have widely condemned the practice of showing suspects singly to persons for the purpose of identification. *Stovall v. Denno, supra; State v. Shore, supra; State v. Henderson, supra.* However, the total circumstances surrounding each case must be considered in determining whether such a confrontation denies an accused his due process rights. We observe parenthetically that in *State v. Henderson, supra,* at page 11, we noted cases in which the courts have held that due process rights were not violated by the single exhibition of a suspect for purposes of identification.

[2]  In our opinion, the totality of the circumstances surrounding the pretrial single exhibition of defendant in this case were unnecessarily suggestive. We, therefore, consider whether the trial judge correctly found and concluded that the prosecuting witness' in-court identification was not tainted by the pretrial confrontation.

The United States Supreme Court case of *Neil v. Biggers,* 409 U.S. 188, 34 L.Ed. 2d 401, 93 S.Ct. 375, reconfirmed earlier holdings that even if a pretrial confrontation is suggestive, due process is not violated by the admission of identification evidence when the total circumstances show the identification to be reliable. In so holding the court enumerated some of the factors to be considered in determining the reliability of the identification, to wit:

> . . . [T]he opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

In instant case the prosecuting witness had opportunity to closely observe defendant in her partially lighted dwelling for a period of about thirty minutes. She sat beside him in an automobile for a period of from two to five minutes and observed him as he obtained gas at a brightly lighted self-service gasoline station. The evidence tends to show that she had previously seen defendant while in high school and had located two of his pictures in two of her high school annuals on the same night that she was attacked. The witness had also seen defendant on the Saturday before the 26th of February 1976 when he came to her trailer, asked for a ride and inquired if there were any dogs nearby. He also asked to use her phone and she directed him to her mother's house. On direct examination the prosecuting witness unequivocally identified defendant as the man who raped her. The witness' answers on cross-examination, which indicated some uncertainty, obviously grew out of her concern that she correctly identify the person who committed the crime.

The trial judge's finding that "there is clear and convincing evidence that the witness' identification of defendant in the courtroom . . . is based on her observation of the alleged person in her trailer on . . . the early morning of 26 February 1976 . . . and her in-court identification is not tainted by any suggestion when she saw him in the Sheriff's Office" is supported by competent evidence. The findings of the trial court, when supported by competent evidence, are conclusive upon this Court. *State v. Shore, supra; State v. Tuggle,* 284 N.C. 515, 201 S.E. 2d 884; *State v. Haskins, supra.* The defendant's motion to suppress the in-court identification testimony of the prosecuting witness was properly denied.

[3] Defendant next argues that the trial judge improperly denied his motion for judgment as of nonsuit.

Rape is the carnal knowledge of a female person by force and against her will. G.S. 14-21. It is defendant's contention that there was insufficient evidence to show that the alleged carnal knowledge of the prosecuting witness was consummated "by force."

On a motion for judgment as of nonsuit the evidence must be considered in the light most favorable to the State and every reasonable inference drawn in favor of the State. *State v. McNeil,* 280 N.C. 159, 185 S.E. 2d 156; 4 N. C. Index 3d, Criminal Law § 104, p. 541. When so viewed, if there is any competent

evidence of each essential element of the offense charged, then the trial judge must deny the motion and submit the case to the jury. *State v. Bell*, 285 N.C. 746, 208 S.E. 2d 506; 4 N. C. Index 3d, Criminal Law § 106, p. 547.

In instant case the testimony of Rebecca Toney Pleasant revealed that when she was awakened by a "nudge" at about 2:00 a.m. on 26 February 1976, she observed two black males standing only one or two feet from the bed in which she and her two-year-old daughter were sleeping. She described one of the men as being about 5 feet 8 inches tall and weighing 150-160 pounds. The other man appeared to be about 5 feet 6 inches tall and to weigh about 145 pounds. Defendant told her that they were not going to hurt her, but that they had given out of gas and wanted her to take them to a service station. After obtaining gas at a nearby service station, the prosecuting witness, her daughter, and the two men returned to her mobile home. Mrs. Pleasant, with her daughter in her arms, was taken into the bedroom by the two men. There defendant began to fondle her and remove her clothes. She began to cry and begged the men not to harm her. She testified that at this point "[d]efendant placed his hand over her mouth and told her to shut up or I would get hurt. I just kept saying, 'Please don't do this.' The defendant threw my blue jeans on the floor and took out my Tampax." Defendant then consummated the intercourse with the prosecuting witness. The other assailant forced her to simultaneously have oral sex with him. She testified that at no time did she consent to have sexual relations with defendant and further stated, "I was afraid for my daughter's life and my life."

The only reasonable inference which may be drawn from this evidence is that Mrs. Pleasant did not voluntarily engage in sexual intercourse with defendant, but "submitted at a time and place when she was helpless to protect herself and her submission was induced by fear of death or serious bodily harm if she resisted." *State v. Williams*, 275 N.C. 77, 165 S.E. 2d 481. It is well established that the force necessary to constitute rape need not amount to actual physical force. Fear, fright or coercion may take the place of actual force. *State v. Armstrong*, 287 N.C. 60, 212 S.E. 2d 894; *State v. Hines*, 286 N.C. 377, 211 S.E. 2d 201; *State v. Primes*, 275 N.C. 61, 165 S.E. 2d 225; *State v. Thompson*, 227 N.C. 19, 40 S.E. 2d 620.

Here, there is plenary evidence to show that fear for her own safety and life and for the safety and life of her infant daughter overcame the prosecuting witness' resistance and caused her to submit to the desires of her assailants. The trial judge properly overruled defendant's motion for judgment as of nonsuit.

Defendant assigns as error the denial of his motion for mistrial.

[4] A motion for mistrial in a case less than capital is addressed to the trial judge's sound discretion and his ruling thereon is not reviewable without a showing of gross abuse. *State v. Daye*, 281 N.C. 592, 189 S.E. 2d 481.

[5] During the direct examination of the prosecuting witness, the District Attorney asked her: "Where were you taken after that?" She replied, "To the bedroom." Defense counsel objected and moved to strike and Judge Preston allowed the motion to strike and instructed the jury not to consider the answer. Immediately thereafter the District Attorney asked the witness what occurred and the witness replied, "I was raped." Again defense counsel's motion to strike was allowed and an instruction given to the jury not to consider the answer. Shortly thereafter the witness, without objection, described in detail the physical acts done by the defendant which met the legal definition of rape.

In response to the District Attorney's questions as to what the defendant did to her the witness replied "he made me have sexual intercourse with him." The trial judge allowed counsel's motion to strike and instructed the jury not to consider the answer. This evidence appears to be relevant as to the question of consent.

Upon cross-examination as to whether defendant used a weapon, the witness explained her answer by saying, "I felt like my daughter was used as a weapon." The trial judge allowed defendant's motion to strike this answer and again instructed the jury not to consider it.

Statements by police officers describing the window in the prosecuting witness' trailer as having been "pried up, pulled up or raised up" and the telephone cord as having "been removed from the phone" were admissible as shorthand statements of fact.

Initially it is our opinion that the majority of this evidence was admissible. Even if it were not, the impact of the evidence was so minimal that we cannot perceive that the result of this case could have been changed by its admission. Further, the action of the trial judge in allowing defense counsel's motions to strike and instructing the jury to disregard the answers cured any possible prejudice to defendant. In *State v. Ray*, 212 N.C. 725, 194 S.E. 482, Justice Devin (later Chief Justice) stated:

> . . . [O]ur system for the administration of justice through trial by jury is based upon the assumption that the trial jurors are men of character and of sufficient intelligence to fully understand and comply with the instructions of the court, and are presumed to have done so.

We further observe that defendant did not move for a mistrial at the time that this evidence was admitted but elected to proceed and take his chances with the jury then impaneled.

Under these circumstances we hold that the trial judge did not abuse his discretion by denying defendant's motion for mistrial.

[6] The prosecuting witness testified that after the two men left, she put on her pants, put her child's coat on her, walked about 75 steps to her parents' trailer and immediately told them "that two black men had broke in on me and raped me." Her testimony tended to show that she arrived at her parents' trailer about two minutes after the men had driven away. Defense counsel objected to the admission of this testimony and the trial judge allowed the defendant's motion to strike. Defendant argues that this evidence was incompetent because it was a legal conclusion and the judge's allowance of his motion to strike did not remove its prejudicial impact.

We are of the opinion that the trial judge erred, but to the benefit of defendant when he allowed defense counsel's motion to strike. This statement was admissible as a "shorthand statement of fact" about which the prosecuting witness had already positively and unequivocally testified. *State v. Sneeden*, 274 N.C. 498, 164 S.E. 2d 190. Further, statements of the victim of a sex crime made within a short time after the commission of the crime are admissible as part of the *res gestae* when there are no circumstances indicating lack of spontaneity. *State v. Cox*, 271 N.C. 579, 157 S.E. 2d 142. The

statement here challenged was made within two or three minutes after the crime occurred and bore every indication of spontaneity.

Further, the testimony of Shirley Ballinger, mother of the prosecuting witness, that her daughter told her that "two black men broke in and raped me" was properly admitted for the purpose of corroborating the testimony of her daughter. 1 Stansbury's N. C. Evidence (Brandis Rev. 1973), § 51, p. 146.

[7] There is no merit in defendant's contention that the trial judge erred by permitting the prosecuting witness' statement that the defendant's companion "made me have oral sex with him" while the defendant was committing the act of rape upon her. Defendant argues that this statement violated the opinion evidence rule and prejudiced defendant because it implied that "defendant made her have sexual relations with him." The inference from this shorthand statement of fact is so well understood that it would have been a waste of time and a needless imposition upon this witness to describe every sordid detail of the act of oral sex. 1 Stansbury's N. C. Evidence (Brandis Rev. 1973), § 125, p. 389; *State v. Goines,* 273 N.C. 509, 160 S.E. 2d 469. The very degrading nature of this act made it relevant and admissible to show that prosecuting witness did not consent to have sexual intercourse with defendant.

Our careful examination of this entire record discloses that defendant was accorded a fair trial in which there was

No error.