STATE OF NORTH CAROLINA v. ELMER LEE

No. 60

(Filed 11 November 1977)

1. **Criminal Law § 91.1— continuance—when motion is reviewable**

   Ordinarily, a motion for continuance is addressed to the sound discretion of the trial judge; however, when such a motion is based on a constitutionally guaranteed right, the question presented is one of law and not discretion and is reviewable on appeal.

2. **Criminal Law § 91.7— continuance to obtain witness—denial proper**

   The trial court did not err in denying defendant's motion for continuance to obtain the presence of an alibi witness who was ill in Washington, D.C. and

State v. Lee

could not attend trial, since no affidavits were filed in support of the motion, nor was there a written certificate from a physician attesting to the nature and existence of the proposed witness's illness; defendant failed to avail himself of the procedures under G.S. 15A-813 for obtaining out-of-state witnesses; and a defendant shows no prejudice where, as in this case, the State admits that a prospective witness, if present, would have testified as contended by the accused.

3. **Criminal Law § 66.9— pretrial photographic identification of defendant—no suggestiveness**

Evidence was sufficient to support the trial court's conclusion that in-court identifications of defendant by a service station employee and a convenience store employee were untainted by pretrial photographic identification procedures where the evidence showed that the service station employee viewed his assailant nine times for a total of thirty seconds in the light from the station and the dome light of a car, concentrated on this person's face at the time and looked at him for the purpose of identifying him, was positive in his belief in the accuracy of his identification, earlier described the irregularity in his assailant's teeth later seen at trial, and identified his assailant's photograph six days after the crime took place; the convenience store employee viewed his attacker for four or five minutes in a well lighted store, was alert and watched the person closely, chose defendant's picture after study of those shown him one day after the attack, and had seen defendant on prior occasions.

4. **Criminal Law § 34— evidence of prior offense—admissibility to disprove alibi evidence**

In a prosecution for armed robbery and aggravated kidnapping of a service station employee, even if the trial court erred in allowing testimony of a convenience store operator concerning defendant's earlier robbery of that store, such error was cured when defendant offered alibi evidence, since the fact that defendant had committed another robbery in the same town less than twenty-four hours earlier became highly relevant and competent to disprove his alibi evidence.

5. **Criminal Law § 43— blackboard sketch—use to illustrate testimony**

In an armed robbery and aggravated kidnapping case where the victim was crippled for life after being shot by his assailant, the trial court did not err in allowing the victim to draw a diagram on a blackboard to illustrate his testimony while sitting in a wheelchair, even if the demonstration did illustrate the victim's paralysis to the jury, since it is permissible for a witness to use a blackboard sketch to illustrate his testimony.

6. **Criminal Law § 102.3— improper jury argument—cure by judge's instructions**

Defendant was not entitled to a mistrial when the State, in closing argument, exhibited photographs to the jury used to identify defendant which had been introduced on voir dire but not placed in evidence at trial, since the trial judge promptly instructed the jury to disregard any reference to the pictures.

APPEAL from *Tillery, J.,* 12 April 1977 Session, WAYNE Superior Court.

Upon indictments proper in form, defendant was charged with and convicted of armed robbery and aggravated kidnapping. He was sentenced to life imprisonment on each charge.

The State's evidence tended to show the following:

On 28 December 1976 at about 11:00 p.m., the victim, Ralph Holmes Burlingame, was employed at a Kayo Service Station at the corner of George and Grantham Streets in Goldsboro, North Carolina. He had been on duty since 4:00 p.m. that day and was in the process of closing the station for the evening. He had turned off all the outside lighting, except those near the ladies rest room and inside the station. At this time, the victim was approached by two black males who sought to buy some beer. After the victim told them that the station was closed, they walked away.

The victim then closed the station and turned to walk toward his automobile, which was parked near the ladies rest room. At this point, the victim saw two black men standing on the opposite side of his car, some ten feet away. He could not recognize either of them at that time. As the victim stood near the door of the filling station, the two black men approached him with drawn pistols. The man standing closest asked the victim if he wanted to live. He replied that he did. The victim was then asked if he had any money, to which he responded that he had three dollars, but could go inside and get thirty dollars more. The two men then ordered the victim into his car. When they tried to enter on the passenger side, the victim told them that the door was jammed, whereupon they came around to the driver's side and got in. The victim was ordered to drive down Grantham Street and make a left turn onto Carolina Street.

Upon being told that he was going to be killed because he was a "white boy," the victim became afraid and jumped from the car after turning onto Carolina Street. He was shot from behind while in the air and landed in the road. The two men approached the victim while he was lying in the road, shot him two more times, searched his pockets and took his wallet, containing the three dollars.

Burlingame was left lying in the road until the police arrived. He was then taken to Wayne Memorial Hospital and later trans–

ferred to Duke University Medical Center, where he remained for one month. Some days after the shooting, the victim was interviewed at Duke Medical Center by officers from the Goldsboro Police Department. At this time, he identified defendant from photographs shown him.

Some twenty-two and one-half hours prior to the robbery and shooting in question, defendant had attempted to rob a Fast Fare store at the corner of George and Ashe Streets in Goldsboro. In the process, the operator, William Edmond Gurley, who had seen defendant before, was shot.

Other evidence disclosed that defendant was seen at the corner of James and Elm Streets in Goldsboro on 28 December 1976 at about 11:00 p.m.

Defendant's evidence tended to show that:

Defendant had been living in Washington, D.C. since October 1976, and had not owned an automobile after November 1976. His wife came to Goldsboro on 27 December 1976 and remained there until 15 January 1977, when she returned to Washington and picked up defendant. Defendant maintained that he remained in Washington at all times between 27 December 1976 and 15 January 1977.

Other facts pertinent to the decision are related in the opinion.

*Attorney General Rufus L. Edmisten by Special Deputy Attorney General Robert P. Gruber for the State.*

*Strickland & Fuller, by Robert E. Fuller, Jr., for the defendant.*

COPELAND, Justice.

Defendant, seeking a new trial, assigns a number of errors. For reasons hereinafter indicated, we conclude that he has had a fair trial, free of prejudicial error.

[1] Defendant first argues that it was error to deny his motion for continuance made the first day of trial. Ordinarily a motion for continuance is addressed to the sound discretion of the trial judge; however, when such a motion is based on a constitutionally guaranteed right, the question presented is one of law and not

discretion and is reviewable on appeal. *State v. Smathers*, 287 N.C. 226, 214 S.E. 2d 112 (1975).

[2] It is defendant's contention that the court's denial of his motion for continuance prevented him from presenting an alibi witness, who was ill in Washington, D.C. and could not attend the trial. Since the right to confront one's accusers and witnesses with other testimony is guaranteed by our Federal and State Constitutions, the question here is one of law, rather than discretion. *State v. Brower*, 289 N.C. 644, 224 S.E. 2d 551 (1976).

Denial of a motion for continuance is grounds for a new trial only upon a showing that the denial was erroneous and that defendant was prejudiced thereby. *State v. Robinson*, 283 N.C. 71, 194 S.E. 2d 811 (1973). In the instant case, no affidavits were filed to support the motion, nor was there a written certificate from a physician attesting to the nature and existence of the proposed witness' illness. Further, defendant failed to avail himself of the procedures under G.S. 15A-813 for obtaining out-of-state witnesses. Ordinarily the absence of a witness who could have been served with a subpoena does not constitute grounds for continuance. *State v. Smathers, supra.* In addition, a defendant shows no prejudice where, as here, the State admits that a prospective witness, if present, would have testified as contended by the accused. *State v. Utley*, 223 N.C. 39, 25 S.E. 2d 195 (1943); *State v. Wellmon*, 222 N.C. 215, 22 S.E. 2d 437 (1942). This assignment of error is overruled.

[3] Next defendant challenges the admissibility of the victim's in-court identification of defendant, as well as that of the convenience store operator. He asserts that the pre-trial photographic identification procedures carried out by the police were so suggestive in nature that the subsequent in-court identifications were irreparably tainted.

In-court identification of a defendant by a witness is barred when photographic identification procedures are "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384, 19 L.Ed. 2d 1247, 1253, 88 S.Ct. 967, 971 (1968). "[T]he factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of atten-

tion, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Neil v. Biggers*, 409 U.S. 188, 199, 34 L.Ed. 2d 401, 411, 93 S.Ct. 375, 382 (1972).

The trial judge found as fact that the victim: (1) viewed his assailant nine times for a total of about thirty seconds in the light from the station and the dome light of the car; (2) concentrated on this person's face at the time and looked at him for the purpose of identifying him; (3) was positive in his belief in the accuracy of his identification; and (4) earlier described the irregularity in his assailant's teeth later seen at trial. We further note that the photographic identification took place only six days after the crime. As to the identification by the convenience store operator, the court found that the witness: (1) viewed his attacker for about four to five minutes in the well-lighted store; (2) was alert and watched the person closely; (3) chose defendant's picture after study of those shown him; and (4) had seen defendant on prior occasions. The record also discloses that this identification occurred the day after the witness was shot. These findings of fact by the trial judge are supported by competent evidence in the record and therefore are conclusive. *State v. Taylor*, 280 N.C. 273, 185 S.E. 2d 677 (1972). In turn, the findings of fact support the court's conclusion of law that these in-court identifications were untainted by impermissible pretrial identification procedures; therefore, this assignment is without merit.

[4] Defendant's third contention involves the admission of testimony of the convenience store operator concerning the earlier robbery of the Fast Fare store, with which defendant was not charged here. It is defendant's argument that the general rule excluding evidence of the commission of other offenses by the accused applies here.

"Evidence of other offenses is inadmissible on the issue of guilt if its *only relevancy* is to show the character of the accused or his disposition to commit an offense of the nature of the one charged; *but if it tends to prove any other relevant fact it will not be excluded merely because it also shows him to have been guilty of an independent crime.*" 1 Stansbury's N.C. Evidence, (Brandis Rev. 1973), § 91, p. 289-90 (emphasis added). Assuming *arguendo* that the admission of this testimony was error, it was

clearly cured when defendant offered alibi evidence. At this point, the fact that defendant had committed another robbery in Goldsboro, less than twenty-four hours earlier, became highly relevant and competent to disprove his alibi testimony that he had been in Washington, D.C. from 27 December to 15 January. This assignment likewise is without merit.

[5] Defendant next argues that the trial court erred in permitting the victim to draw a diagram on a blackboard to illustrate his testimony while sitting in a wheelchair. Evidence disclosed that the victim apparently had been crippled for life after being shot in the back. Defendant asserts that the only real purpose of the demonstration was to illustrate the victim's paralysis to the jury.

This assignment clearly is without merit. It is certainly permissible for a witness to use a blackboard sketch to illustrate his testimony. *State v. Cox*, 271 N.C. 579, 157 S.E. 2d 142 (1967). Since the evidence sought was relevant, it will not be excluded merely because it might tend to excite the jury. *State v. Kirby*, 273 N.C. 306, 160 S.E. 2d 24 (1968).

[6] Finally, defendant maintains that the trial court should have declared a mistrial when the State, in closing argument, exhibited photographs to the jury used to identify defendant which had been introduced on *voir dire* but not placed in evidence at trial. Upon having it called to his attention, the trial judge promptly instructed the jury to disregard any reference to the pictures, since none were in evidence. Ordinarily, improper argument of counsel is cured when the trial court promptly sustains the objection and cautions the jury not to consider it. *State v. Covington*, 290 N.C. 313, 226 S.E. 2d 629 (1976); *State v. Sparrow*, 276 N.C. 499, 173 S.E. 2d 897 (1970). Thus, this assignment is overruled.

Having examined all the assignments of error, we conclude that defendant has had a fair trial, free of error; therefore, in the verdicts and judgments we find

No error.