STATE OF NORTH CAROLINA v. DAVID EUGENE RUSSELL

No. 8828SC444

(Filed 7 February 1989)

1. **Searches and Seizures § 10— warrantless search of vehicle improper—defendant not prejudiced**

   Though the trial court erred in denying defendant's motion to suppress evidence obtained from a warrantless seizure of his automobile, since there were no exigent circumstances and the car did not come within the plain view exception, such error was not prejudicial to defendant, since defendant admitted in his initial meeting with the police that he had been wearing a Dracula costume on the night of the crimes; he was seen in the Fast Fare where some of the crimes took place earlier in the evening wearing that costume; the victim recognized defendant as a regular customer and was able to give a detailed description of him the night of the rape; the victim positively and unwaveringly identified defendant both in a pretrial photographic showing and at the voir dire hearing; money found in defendant's room was traced back to the Fast Fare, whereas the roll of nickels found in his car was not; Dracula

teeth found in the car only corroborated what defendant had admitted early on; and defendant confessed to the crimes.

**2. Criminal Law § 75.14— diminished mental capacity—defendant capable of making voluntary confession**

There was no merit to defendant's contention that, because of his diminished mental capacity, he was unable to confess voluntarily and waive his Fifth Amendment rights.

**3. Searches and Seizures § 16— mother's consent to search of defendant's room**

Evidence was sufficient to support the trial court's finding that there was valid third party consent to search defendant's residence where it tended to show that defendant's mother, who owned the residence, lived there with him, and apparently had common authority over the premises with her son, gave the police permission to search the residence, including defendant's bedroom. N.C.G.S. § 15A-222(3).

**4. Criminal Law § 66.16— pretrial photographic identification—independent origin of in-court identification**

The trial court did not err in denying defendant's motion to suppress an out-of-court photographic identification and subsequent in-court identification of defendant by the victim where the victim was with her assailant for several hours at the time of the crime and had ample time to view him.

**5. Rape and Allied Offenses § 4.2— physical condition of prosecutrix—denial of motion to continue to obtain medical records**

The trial court in a rape case did not err by not granting a motion to continue a voir dire in order that the victim's medical records could be obtained for the purpose of cross-examining her doctor more fully, since defendant had ample opportunity to prepare his case but failed to subpoena the records until the day of the voir dire hearing to suppress the witness's identification; defendant sought the records in order to show that the victim's physical condition, or medications administered, diminished her perceptual abilities when she identified defendant's photograph; though the doctor could not relate what medications the victim had been given at any one time, he could and did testify as to her condition during her hospital stay; and the victim's in-court identification was clear and convincing and was made independent of any impermissible identification procedure.

**6. Criminal Law § 138.14— mitigating factor of good reputation—insufficiency of evidence**

The trial court did not err in refusing to find as a statutory mitigating factor that defendant had a good reputation in the community, since defendant's only evidence as to his good reputation in the community was the testimony of his mother, and defendant had been away from the community for ten years and had returned only two or three months prior to the crime. N.C.G.S. § 15A-1340.4(a)(2)(m).

7. **Constitutional Law § 30; Criminal Law § 145.5— consideration of aggravating and mitigating circumstances—refusal of court to review defendant's parole records**

    The trial court did not err in refusing to review, *in camera*, defendant's parole records during both suppression and sentencing hearings, and to grant defendant access to those records, since the material in defendant's parole records was privileged, and the only way it could be obtained was for defendant to follow the procedures of N.C.G.S. § 15-207.

8. **Criminal Law § 75.1— statements made to officers—defendant not in custody—statements voluntary**

    There was no error in the trial court's denial of defendant's motion to suppress statements he made to law enforcement officers, since a reasonable person in defendant's circumstances would not have felt himself in custody, and the statements were voluntarily made.

APPEAL by defendant from *Lewis, Robert D., Judge.* Judgment entered 18 September 1987 in Superior Court, BUNCOMBE County. Heard in the Court of Appeals 5 December 1988.

On 31 October 1986, while working at a Fast Fare convenient mart, Monica Rauls was abducted at knifepoint and later raped by defendant. After raping Ms. Rauls, defendant stabbed her repeatedly and beat her with a stick. Ms. Rauls was eventually able to elude defendant and made her way to a farmhouse where help was called.

Ms. Rauls told the police that a man whom she recognized as a regular customer, and who was wearing a "Dracula" costume, robbed the Fast Fare, raped and beat her.

Upon learning that defendant had been seen earlier in the evening at the same Fast Fare wearing a Dracula costume, Detectives Smith and Wolfe, accompanied by a uniformed officer, went to defendant's home. They spoke to defendant briefly about their investigation and asked him to accompany them to the police station to have a photograph made. Defendant freely consented, stating that he wanted to be cooperative.

At the police station defendant gave to Detective Smith an account of his whereabouts the previous day and evening. After discerning some discrepancies in defendant's story, Detective Smith informed defendant of his *Miranda* rights and defendant signed a waiver form. Defendant had become increasingly agitated and nervous, and upon being read his rights and waiving

---

State v. Russell

---

them, told Detective Smith that he did not know why he had committed this act and that this was going to kill his mother.

. Detective Wolfe entered the room where defendant and Detective Smith were, and defendant refused to say anything further while Detective Wolfe was in the room. When she exited the room, defendant told Smith that he, defendant, was the man they were looking for, that he was the man who had committed this act, but he could not talk about it. He then asked for an attorney and the conversation ceased.

Later that day, Detective Smith and other officers returned to defendant's residence which he shared with his mother and grandmother. Smith called the mother, who owned the residence, and obtained her consent to search it. She met the police at the residence and signed a consent form.

In defendant's room was found money, consisting of dollar bills, and several rolls of coins, one of which was later identified as part of the money stolen from the Fast Fare. Also found in the room was a pair of black boots, black pants, blue jeans and a blouse in a laundry basket in another part of the house.

Defendant's car, parked in his driveway, was impounded by the police and searched without a warrant two days later. Seized from the inside of the car was a plastic extractor, Dracula teeth, a roll of nickels, and a roll of twine. Inconclusive tests for blood and fiber were performed on the car.

Two days after defendant confessed and was arrested, Detectives Smith and Wolfe interviewed Ms. Rauls while she was in the hospital. They obtained a complete statement from her and showed her six pictures of men fitting her earlier description of her assailant. She immediately picked defendant's picture out as her attacker.

Defendant made motions to suppress (1) defendant's statement to the police, (2) money and clothing seized during the search of his house and room, (3) physical evidence obtained from the search of his car, (4) the pre-hearing identification of defendant by Ms. Rauls, and later (6) the in-court identification of defendant by Ms. Rauls. The trial court denied all of these motions.

Pursuant to N.C.G.S. § 15A-979(b), defendant entered pleas of guilty to the offenses of: first degree rape, first degree sexual offense, first degree kidnapping, robbery with a dangerous weapon, and assault with a deadly weapon with intent to kill. He also entered a plea of no contest to a separate charge of first degree sexual offense. Defendant was sentenced to cumulative sentences of life plus ninety (90) years.

From the denial of defendant's motions and the sentences imposed, defendant appeals.

*Attorney General Lacy H. Thornburg, by Assistant Attorneys General John H. Watters and Doris J. Holton, for the State.*

*David Belser, Assistant Public Defender, for defendant appellant.*

ARNOLD, Judge.

[1] Defendant argues that the trial court erred in denying his motion to suppress the evidence obtained from the warrantless seizure of his automobile. Absent consent, or some form of exigent circumstances, a warrant based on probable cause is required for a valid search and/or seizure under the Fourth Amendment. United States Constitution, Fourth Amendment. The United States Supreme Court in *Coolidge v. New Hampshire*, 403 U.S. 443 (1971), held that no exigent circumstances justified the failure of the police to obtain a warrant for the seizure and search of an automobile parked in the defendant's driveway, because the police knew the car was there and planned to seize it when they went to defendant's house.

A plurality of the Court fashioned a three-part test to determine if a search and/or seizure comes within the "plain view" doctrine established by this case. First, the initial intrusion that brings the evidence into plain view must be lawful. Second, the discovery of the evidence must be inadvertent. Third, it must be immediately apparent to the police that the items observed constitute evidence of a crime or are otherwise subject to seizure. *Id.* Our Supreme Court adopted this three-part analysis of warrantless seizures or searches. *See State v. Williams*, 315 N.C. 310, 338 S.E. 2d 75 (1986).

In the case *sub judice*, as in *Coolidge*, defendant was in custody when his car was seized without a warrant. The police had probable cause, but they had no warrant. There were no exigent circumstances, the car did not come within the "plain view" exception, and thus the seizure was a violation of defendant's Fourth Amendment rights.

While the trial court committed error in denying defendant's motion to suppress the evidence obtained from the search of the car, the error in this case is harmless. Even error contravening one's constitutional rights can be harmless. *Chapman v. California*, 386 U.S. 18 (1967); N.C.G.S. § 15A-1443(b); *State v. Brown*, 306 N.C. 151, 293 S.E. 2d 569, *cert. denied*, 459 U.S. 1080 (1982), and *cert. denied*, 479 U.S. 940 (1986).

The United States Supreme Court has applied the harmless error analysis to guilty pleas based on ineffective assistance of counsel. *See Hill v. Lockhart*, 474 U.S. 52 (1985). For a defendant to show that ineffective counsel was harmful, he must show that there is a reasonable probability that, but for counsel's error, he would not have entered a plea of guilty. *Id.* at 58.

Error committed at trial infringing upon one's constitutional rights is presumed to be prejudicial and entitles him to a new trial unless the error was harmless beyond a reasonable doubt. N.C.G.S. § 15A-1443(b); *Brown*, 306 N.C. 151, 293 S.E. 2d 569 (1982). This harmless error analysis has been applied to violations of the Fourth Amendment, and we see no reason why the analysis should not be applicable to guilty pleas partly based on evidence that should have been suppressed. *See State v. Autry*, 321 N.C. 392, 364 S.E. 2d 341 (1988).

In no way does this decision set precedent for denial of a motion to suppress to be considered harmless error because defendant, pursuant to G.S. 15A-979(b), pled guilty. It is because there is a full evidentiary record before us that gives this Court full benefit of all the evidence, admissible and inadmissible, that we are able to say, beyond all reasonable doubt, that failure to suppress evidence obtained from the car could not have affected defendant's decision to plead guilty in light of the overwhelming evidence of his guilt.

The evidence presented at *voir dire* which showed that defendant was guilty of the crimes charged was overwhelming. Defendant admitted in his initial meeting with the police that he had been wearing a Dracula costume the night before. He was seen in the same Fast Fare earlier in the evening wearing that costume. The victim recognized defendant as a regular customer and was able to give a detailed description of him the night of the rape. The victim positively and unwaveringly identified the defendant both in a pre-trial photographic showing, and at the *voir dire* hearing.

The evidence found in defendant's room was much more incriminating than that found in the car. The money found in the room was traced back to the Fast Fare, whereas the roll of nickels found in the car was not. The Dracula teeth found in the car only corroborated what defendant admitted early on. Lastly, and most importantly, as the State argues, defendant confessed to the crimes.

[2] Defendant further argues that because of his diminished mental capacity, he was unable to confess voluntarily and waive his Fifth Amendment rights. Standing alone, subnormal mental capacity does not render a confession incompetent, if it is in all other respects voluntarily and understandingly made. *State v. Thompson*, 287 N.C. 303, 214 S.E. 2d 742 (1975). In *Thompson*, the Supreme Court stated further:

> If a person has the mental capacity to testify and to understand the meaning and effect of statements made by him, he possesses sufficient mentality to make a confession. Nevertheless, his mental capacity, or his lack of it, is an important factor to be considered in determining the voluntariness of a confession.

*Id.* at 318, 214 S.E. 2d at 752 (1975) (citing *Blackburn v. Alabama*, 361 U.S. 199 (1960)).

The trial judge here made findings that defendant had been diagnosed as mildly retarded. He noted, however, that such diagnosis was not a part of the evaluation of defendant made by Dorothea Dix State Hospital.

Defendant may have had a low mental IQ, however, he was not so diminished as to make his confession involuntary. *See*

*Thompson,* 287 N.C. 303, 214 S.E. 2d 742 (1975). The trial court, therefore, did not commit error in finding that defendant confessed voluntarily.

[3]   Defendant next assigns as error the finding by the trial court that there was valid third party consent to search defendant's residence.

N.C.G.S. § 15A-222(3) states that, "[T]he consent needed to justify a search and seizure . . . must be . . .: By a person who by ownership or otherwise is reasonably apparently entitled to give or withhold consent to a search of premises." This issue of common authority was addressed by the United States Supreme Court in *U.S. v. Matlock,* 415 U.S. 164 (1974), stating:

> Common authority is, of course, not to be implied from the mere property interest a third party has in the property. The authority which justifies the third-party consent does not rest upon the law of property, with its attendant historical and legal refinements, . . . but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

415 U.S. at 171.

This Court has held that N.C.G.S. § 15A-222(3) is "consistent with the language in *Matlock* . . . that permission may be 'obtained from a third party who possessed common authority or other sufficient relationship to the premises or effects sought to be inspected.'" *State v. Washington,* 86 N.C. App. 235, 246, 357 S.E. 2d 419, 427 (1987), *cert. denied,* 322 N.C. 485, 370 S.E. 2d 235 (1988) (quoting *State v. Kellum,* 48 N.C. App. 391, 397, 269 S.E. 2d 197, 200; *Matlock,* 415 U.S. at 171) (emphasis deleted).

Findings of fact by the trial court show that defendant's mother, who owned the residence and lived there with him, gave the police permission to search the residence, including defendant's bedroom. When asked if defendant was paying rent, she replied "No," but she also said defendant was "paying his way." From these and other findings, the trial court concluded that de-

fendant's mother had common authority over the premises with her son, that she owned the residence, and that she was apparently entitled to give or withhold consent to the search of the premises.

The trial court's findings of fact were supported by competent evidence. There may have been evidence to the contrary, but it is the responsibility of the trial court to determine what evidence will be fact.

[4] Defendant next assigns as error the trial court's denial of his motion to suppress the out-of-court photographic identification and subsequent in-court identification of the defendant by the victim.

Assuming arguendo that if the pre-hearing photographic identification by the victim was suggestive, and we do not believe that it was, it was nevertheless reliable under the totality of circumstances. *See Matter of Stallings*, 318 N.C. 565, 350 S.E. 2d 327 (1986), *reh'g dismissed*, 319 N.C. 669, 356 S.E. 2d 339 (1987); *Neil v. Biggers*, 409 U.S. 188 (1972); *see, also, Manson v. Brathwaite*, 432 U.S. 98 (1977).

We likewise conclude that even if the pre-hearing identification were unduly suggestive, the victim's in-court identification was free from taint. *See State v. Yancey*, 291 N.C. 656, 231 S.E. 2d 637 (1977). The victim was with defendant for several hours and had ample time to view her assailant. Moreover, her identification of him in court was unwavering.

Defendant next assigns as error the trial court's alleged refusal to allow defense counsel to cross-examine Detective Smith regarding defendant's emotional state at the time of his confession and regarding the circumstances of the removal of defendant from his home. This is a feckless argument.

Defendant particularly claims that defense counsel was denied cross-examination of Detective Smith about whether he and the other officers had their guns unholstered when they went to defendant's residence. The trial court did deny this cross-examination initially; however, any possible error was corrected when defense counsel was allowed to fully question the Detective about his and the other officers' weapons.

Defendant further contends that defense counsel was prohibited from effectively cross-examining the Detective about his motives in requesting defendant to accompany the police to the station. Detective Smith admitted that he preferred to have defendant at the station for the questioning. Defense counsel continued in this line of questioning, after the detective's acknowledgment of his motives, and the trial court correctly stemmed the redundant questions. *See State v. Boykin*, 298 N.C. 687, 259 S.E. 2d 883 (1979), *cert. denied*, 446 U.S. 911 (1980) (ruling on allowance of questioning by counsel is within discretionary power of trial court). There was no abuse of discretion by the trial court here. *See id.*

Even if defense counsel had been denied effective cross-examination of Detective Smith about his motives, "any subjective intent the officers may have had to arrest defendant is immaterial because their subjective intent is irrelevant to the question of whether a reasonable person in the defendant's position would believe himself to be in custody." *State v. Braswell*, 312 N.C. 553, 557, 324 S.E. 2d 241, 245 (1985).

[5] Defendant next contends that the trial court erred by refusing to allow defense counsel to cross-examine the victim's doctor regarding the medical records and condition of the victim when she identified defendant's picture. Defendant also argues that the court erred by not granting a motion to continue the *voir dire* in order that victim's medical records could be obtained with which more fully to cross-examine the doctor.

From the record defendant clearly had ample time and opportunity to prepare his case. The medical records in question were known from the very beginning, however, defendant only subpoenaed them the day of the *voir dire* hearing to suppress the witness's identification. A trial judge is fully justified in his discretionary denial of a last-minute continuance when it should have been made before extensive preparation for trial had been completed and the *voir dire* hearing begun. *See State v. Baldwin*, 276 N.C. 690, 174 S.E. 2d 526 (1970).

Defendant sought the medical records, and a continuance to obtain the records, in order to cross-examine defendant's doctor, and to show that victim's physical condition, or medications administered, diminished her perceptual abilities when she iden-

tified defendant's photograph. Although without the medical records sought, the doctor could not relate what medications the victim had been given at any one time, he could and did testify as to her condition during her hospital stay.

The doctor did have before him some medical records, and these, coupled with his knowledge of his treatment procedure, enabled the doctor to testify sufficiently for the court to conclude the victim was alert and perceptive enough to identify the defendant.

Even assuming that the pre-hearing identification was unnecessarily suggestive, or that the victim was not alert, her in-court identification was clear and convincing and was made independent of any impermissible identification procedure. *See Yancey,* 291 N.C. 656, 231 S.E. 2d 637 (1977); *see, also, State v. Stepney,* 280 N.C. 306, 185 S.E. 2d 844 (1972).

[6] Defendant next assigns as error the trial court's refusal to find a statutory mitigating factor under N.C.G.S. § 15A-1340.4(a)(2)(m) and that is that defendant had a good reputation in the community.

The test for determining when a trial court must find a statutory mitigating factor is two-pronged. First, the evidence must so clearly establish the fact in issue that no reasonable inferences to the contrary can be drawn. Secondly, the credibility of the evidence must be manifest as a matter of law. *State v. Jones,* 309 N.C. 214, 306 S.E. 2d 451 (1983). Further, uncontradicted, quantitatively substantial, and credible evidence may simply fail to establish, by a preponderance of the evidence, any factor in aggravation or mitigation. *State v. Michael,* 311 N.C. 214, 316 S.E. 2d 276 (1984).

Whether factors are mitigating or aggravating, they still must be proven by a preponderance of the evidence. *Id.* Defendant's only evidence as to his good reputation in the community was the testimony of his mother. Defendant had been away from the community for ten years and had returned only two or three months prior to the crime.

Although a witness related to a defendant is not necessarily incredible, the trial court has the discretion to reject testimony of biased witnesses. *See State v. Taylor,* 309 N.C. 570, 308 S.E. 2d

302 (1983); *see, also, State v. Benbow,* 309 N.C. 538, 308 S.E. 2d 647 (1983). The trial court did not err in declining to find, as a statutory mitigating factor, defendant's good reputation in the community.

[7]  Finally, defendant assigns as error the trial court's refusal to review, *in camera,* defendant's parole records during both the suppression and sentencing hearings.

N.C.G.S. § 15-207 states that:

> All information and data obtained in the discharge of official duty by any probation officer shall be privileged information, shall not be receivable as evidence in any court, and shall not be disclosed directly or indirectly to any other than the judge or to others entitled under this Article to receive reports, unless and until otherwise ordered by a judge of the court or the Secretary of Correction.

Defendant requested, in a motion for discovery, any "psychological or psychiatric records, files, information or knowledge in the possession of the State or any of its agents, including the Department of Corrections, Division of Prisons, Pre-Release & Aftercare or Parole Officer James Bellamy or Investigators Van Smith or Barbara Wolfe. . . ."

The trial court stated in the suppression hearing that N.C.G.S. § 15-207 requires a court order to obtain probation records to protect their confidentiality, and that this applied to defendant. The court stated further that if defense counsel would follow the procedure under this statute, he might be allowed access to defendant's file.

The material in defendant's probation records was not in the possession of the State's attorney, and the only way it could be obtained was through N.C.G.S. § 15-207. Defendant's discovery motion, therefore, was not applicable to defendant's probation records in question.

We conclude that the trial court did not err in refusing to grant defendant privileged information, regardless of the fact that it pertained to defendant. Had defense counsel followed the statutory procedure under N.C.G.S. § 15-207, he possibly could

have gained access; as it was, he was no more entitled than the State or anyone else to those confidential records.

[8] Finally, there was no error in the trial court's denial of defendant's motion to suppress the statements he made to the law enforcement officers. In short, a reasonable person in defendant's circumstances would not have felt himself in custody. The court found that defendant was not in custody, and that defendant's statements were voluntarily made. Findings of fact supported as they are here by the record are binding on this Court. *State v. Stevens*, 305 N.C. 712, 291 S.E. 2d 585 (1982).

"Voluntariness" with which we are concerned in a case like this is the freedom from compelling influences that force a person to say what he otherwise would not say. *See Rhode Island v. Innis*, 446 U.S. 291 (1980). That type of compelling influence simply was not present in this case.

We find no error in the trial court's rulings at defendant's suppression hearings.

Affirmed.

Chief Judge HEDRICK and Judge ORR concur.