STATE OF NORTH CAROLINA v. GRADY LONG, JR.

No. 7215SC353

(Filed 24 May 1972)

1. Narcotics § 2— sale of marijuana — indictment — name of purchaser

An indictment charging the unlawful sale of marijuana must allege the name of the purchaser or that his name is unknown.

2. Constitutional Law § 29; Jury § 7— jury list — absence of persons under age 21

The petit jury which served at the trial of a 20-year-old defendant was not invalidated by the fact that the jury list had not been revised to include the names of persons under 21 years of age. G.S. 9-3.

3. Grand Jury § 2; Indictment and Warrant § 14— return of fictitious indictments — effect on subsequent indictment

Improper action of the grand jury in returning two fictitious bills of indictment charging undercover agents with narcotics violations, including the undercover agent who was the principal witness against defendant, did not necessarily taint all processes of that grand jury so as to require as a matter of law that a bill of indictment charging defendant with transportation of marijuana be quashed.

4. Criminal Law § 88— cross-examination — indictment of friend of defendant

In a prosecution for transportation of marijuana wherein defendant testified that he spent the night of the alleged crime on a college campus in the room of a student at the college, the trial court committed prejudicial error in permitting the solicitor to elicit on cross-examination of defendant's witnesses testimony that the student with whom defendant spent the night had been indicted on four counts of violating narcotic drug laws.

**5. Narcotics § 5— transportation — punishment**

    The punishment for unlawful transportation of narcotics in viola-
tion of the Uniform Narcotic Drug Act was not limited to the con-
fiscation of the vehicle used in such transportation, but in addition a
fine or imprisonment, or both, could be interposed as authorized in
former G.S. 90-111(a).

APPEAL by defendant from *Hobgood, Judge,* October 1971
Criminal Session of Superior Court held in ALAMANCE County.

On 4 May 1971 the grand jury of Alamance County re-
turned as true bills two bills of indictment charging defendant
with violations of the Uniform Narcotic Drug Act, which was
then in effect. In Case No. 71CrS4792 defendant was charged
with unlawfully selling 23.6 grams of marijuana, and in Case No.
71CrS4793 he was charged with unlawfully transporting 23.6
grams of marijuana in a 1968 Pontiac, license No. FM-9903,
registered to Grady B. Long, Sr. In each case the offense was
alleged to have been committed on 19 March 1971 in Alamance
County. Defendant pleaded not guilty to both charges. The two
cases were consolidated for trial.

The State's cases rested upon the testimony of Isaac M.
Clontz, alias Vincent Arnold Barnett, an undercover agent, who
testified that he met defendant at 9:30 p.m. on 19 March 1971
on the parking lot of the Holly Hill Mall in Alamance County,
that defendant drove to the meeting place in the 1968 Pontiac
described in the indictment in Case No. 71CrS4793, got out of
his car and into the agent's car, and there delivered and sold
the marijuana to the agent for the price of $40.00. The sub-
stance which the undercover agent said he purchased from
defendant was tested by a chemist and found to be marijuana.

Evidence for the defense was in substance as follows:
Defendant testified that he never sold any marijuana to the
undercover agent at any time, had never possessed any mari-
juana, had never been convicted of violating any laws relating
to narcotics or other drugs, and until the present cases, had not
been charged with violating such laws. In March 1971 he was
twenty years old, lived with his parents in Burlington, and
was awaiting induction into the Air Force. The previous fall
he had attended Campbell College at Buie's Creek, N. C., which
is approximately 90 miles from Burlington. On 16 March 1971
he left Burlington and went to Campbell College to visit friends.
On this trip he thumbed rides because his parents had to have
the car. He remained in the area of Campbell College and Buie's

Creek continuously from the time of his arrival on the night of 16 March 1971 until his mother drove the 1968 Pontiac to the College on 20 March 1971, and brought him home to Burlington.

Four friends of defendant, all students at Campbell College, testified to defendant's presence at the College during the period of 16 March to 20 March 1971. Defendant's father testified that the 1968 Pontiac had been in his exclusive possession during the entire day and night of 19 March 1971. Defendant's mother testified that she had driven him out to the interstate highway on the afternoon of 16 March 1971 in order that he might catch a ride to Campbell College, and that on 20 March 1971 she had driven the 1968 Pontiac to the College to pick up her son. There was also evidence for the defense tending to attack the credibility and motivation of the State's witness, Clontz.

The jury found defendant guilty in each case. Judgment was imposed in each case sentencing defendant for a term of three years as a committed youthful offender, the two sentences to run concurrently. Defendant appealed.

*Attorney General Robert Morgan by Associate Attorney Ann Reed and Associate Attorney Thomas W. Earnhardt for the State.*

*Clarence Ross for defendant appellant.*

PARKER, Judge.

[1] The indictment in Case No. 71CrS4792 fails to state the name of the person to whom defendant allegedly sold marijuana or that the name of such person is unknown. Lacking either of these allegations, the indictment is fatally defective and cannot sustain the judgment in that case. *State v. Bennett,* 280 N.C. 167, 185 S.E. 2d 147. In fairness to the able trial judge, we point out that *State v. Bennett, supra,* was not decided by our Supreme Court until two months after the trial of the instant case. Since judgment in Case No. 71CrS4792 must be arrested, the remainder of this opinion will deal only with Case No. 71CrS4793 in which defendant was tried and convicted for illegal transportation of marijuana.

[2] Defendant was tried in October 1971, at which time he was 20 years of age. By Chapter 1231 of the 1971 Session

Laws, G.S. 9-3 was amended effective 21 July 1971 so as to make persons 18 years of age and over eligible to serve as jurors. Prior to that amendment a juror was required to be 21 years of age or older. At the time of defendant's trial, the jury list in Alamance County had not been revised to include the names of any persons under 21 years of age. On this ground defendant attacks the validity of the petit jury which served at his trial. A similar attack was made and rejected by our Supreme Court in *State v. Cornell,* 281 N.C. 20, 187 S.E. 2d 768, decided 12 April 1972. On authority of that case, defendant's assignments of error in which he seeks to question the validity of the petit jury are overruled.

[3] The record reveals that the grand jury in returning the indictment against defendant as a true bill, did so after receiving testimony from only one witness, O. F. Hoggard, a sergeant with the Burlington Police Department. This officer testified at defendant's trial. On cross-examination by defendant's counsel, the officer testified that he had gone before the same grand jury and had induced the return of two sham bills of indictment as true bills. In one of these, "Vincent A. Barnett," whose true name was known to the officer to be Isaac M. Clontz, was charged with violating the narcotic drug act, and in the other, another undercover agent was similarly falsely charged. The accused in the first of these bogus bills of indictment was the same undercover agent who was the principal witness against the defendant. This witness, Clontz, also testified on cross-examination that he had had a conference with the solicitor and with Detective Hoggard, and, to "strengthen" his position as an undercover agent, it had been "arranged" that the witness would be arrested on a charge of violating the narcotic drug laws and would then be released on bond. Officer Hoggard testified he "arranged" for the bondsman to sign this bond and that Clontz, alias Vincent A. Barnett, did not pay any bond premium. He also testified he had revealed Clontz's true name and identity to the grand jury at the time he had obtained the false bill of indictment against "Vincent A. Barnett."

Defendant contends that the foregoing transactions before the grand jury, which came to light only during the course of cross-examination of the State's witnesses, so tainted the processes of the grand jury that his motion in arrest of

---

---

judgment should have been allowed. In response, the State's brief contains the following:

> "It is apparent from the record that in seeking the fictitious indictments against the two undercover agents, the State was attempting to protect these agents. The State contends that if undercover agents cannot be given this protection, their efforts in the area of drug abuse will be severely hampered."

Perhaps so, but we would only compound one corruption with another if, in attempting to stamp out drug abuse, we condone practices which can only result in corrupting essential processes of justice. The foreman and members of a grand jury take an oath to "present all things truly." G.S. 11-11. No solicitor or law enforcement officer, whatever his motives, should knowingly induce the grand jury to violate that oath. Such conduct is not condoned.

Nevertheless, while the question raised is a serious one, we have been cited to no authority and our research has disclosed none which holds that the action of a grand jury in knowingly returning a fictitious bill as true against one person, necessarily so taints all processes of that grand jury as to require that other bills returned as true bills charging other defendants with committing other offenses must, as a matter of law, be quashed. We find nothing in the record to suggest that the grand jury acted falsely in returning the true bill against *defendant*. Therefore, we find no error in the trial court's denial of defendant's motion in arrest of judgment.

[4] In the course of testifying concerning his activities during the period from 16 to 20 March 1971, defendant testified he spent the nights of 18 and 19 March 1971 on the campus of Campbell College in the room of a person who was then a student at the College. This person, Don McNamara, did not testify at defendant's trial. On cross-examining two of the college students who did testify for defendant, the solicitor was permitted, over defendant's objections, to bring before the jury the fact that on 24 June 1971 the grand jury in Harnett County had indicted McNamara on four counts of violating narcotic drug laws. Defendant assigns error to the overruling of his objections to this testimony, and this assignment of error must be sustained.

It is now established in North Carolina that, for purposes of impeachment, a witness may not be cross-examined as to whether he has been indicted for a criminal offense, since "an indictment cannot rightly be considered as more than an unproved accusation." *State v. Williams,* 279 N.C. 663, 185 S.E. 2d 174. (As the record in the present case demonstrates, it is even possible that on occasion an indictment may be no more than a fictitious accusation.) If evidence that McNamara was under indictment for violation of drug laws would not have been competent for purposes of impeaching his credibility had he been a witness, *a fortiori* it was not competent for purposes of impeaching the credibility of defendant or of any other person who did testify at defendant's trial. Still less was it either competent or relevant to prove any material fact bearing upon the issue of defendant's guilt or innocence of the crimes for which he was being tried. Allowing such evidence to be presented to the jury opened up obvious possibilities that some process of finding "guilt by association" may have affected their verdict. We hold that, under the circumstances of this case, defendant suffered prejudicial error when his timely objections to such evidence were overruled, and by reason of this error he is entitled to a new trial.

[5] Defendant has filed in this Court a motion to arrest the active sentence imposed by the trial court in Case No. 71CrS4793. In support of this motion defendant contends that the only punishment which could lawfully be imposed upon a conviction for unlawful transportation of narcotic drugs is confiscation of the vehicle used in such transportation as authorized by former G.S. 90-111.2(b). We do not agree. The Uniform Narcotic Drug Act, formerly contained in Article 5 of Chapter 90 of the General Statutes, was in effect prior to 1 January 1972 and is controlling in this case. Former G.S. 90-111.2(a)(1) made it unlawful to transport any narcotic drug in, upon, or by means of any vehicle, except as authorized in Article 5. Former G.S. 90-111(a) provided that any person violating any provision of Article 5 might be punished by fine or imprisonment, or both. We hold that punishment for unlawful transportation of narcotic drugs was not limited to the confiscation of the vehicle used in such transportation, as defendant contends, but that in addition a fine or

imprisonment, or both, might be imposed as authorized in former G.S. 90-111(a).

The result is:

In Case No. 71CrS4792, the judgment is arrested.

In Case No. 71CrS4793, defendant is granted a new trial.

Judges BRITT and HEDRICK concur.