STATE OF NORTH CAROLINA v. JOSEPH SLEDGE, JR.

No. 34

(Filed 17 May 1979)

1. **Constitutional Law § 30 — names of State's witnesses — no discovery — no error**

     The trial court did not err in denying defendant's motion for the names of prison inmates who would testify to incriminating statements defendant had allegedly made to them, since G.S. 15A-903 does not afford an accused the right to discover the names and addresses of the State's witnesses and since, by virtue of an earlier trial of the case which resulted in a mistrial, defendant had the names of inmates who were to testify against him in his second trial as well as a copy of the witnesses' prior recorded testimony.

2. **Constitutional Law § 30 — slides of homicide victims — no discovery — no error**

     The trial court in a murder prosecution did not err in failing to require the prosecution to furnish to defendant, prior to trial, photographic slides of the bodies of the victims, since defendant viewed the slides at his first trial and his counsel cross-examined the doctor who illustrated his testimony by the use of those slides.

3. **Homicide § 20.1 — use of photographs — murder — no prejudice**

     Though the State in a murder prosecution likely could have illustrated medical testimony fully as well with fewer pictures of the exhumed bodies of the victims, the use of nine photographs of the two victims which were not repetitious was not prejudicial to defendant.

4. **Homicide §§ 15, 15.5 — autopsy — pepper can — competency of evidence**

     In a homicide prosecution a 64-day delay in performing autopsies on the bodies of the victims went to the weight of such evidence rather than its competency; likewise, a seventeen month delay in ascertaining the relevancy of a black pepper can found at the scene of the murder went to the weight of the evidence rather than its competency.

5. **Criminal Law § 119 — request for instructions — instructions given in substance**

     The trial court's instruction on circumstantial evidence was correct and substantially in accord with defendant's request, and the court was not required to give defendant's requested instruction verbatim.

6. **Homicide § 20.1 — photographs and sketches — use for illustration only**

     The trial court in a homicide prosecution did not err in permitting the district attorney to use various photographs and sketches for illustrative purposes where the judge gave an appropriate limiting instruction when each exhibit was tendered for illustrative purposes; the judge instructed the jury during his charge that the photographs and sketches were admitted solely to illustrate the testimony of the witnesses and for no other purpose; and in each instance the witness did in fact use the exhibits to illustrate his testimony.

DEFENDANT appeals from judgments of *Clark, J.*, entered at the 21 August 1978 Session, COLUMBUS Superior Court.

Defendant was charged in separate bills of indictment with the murders of Aileen Davis and Josephine Davis on 6 September 1976 in Bladen County. On motion by defendant the case was removed to Columbus County for trial. His first trial at the May 1978 Session of Columbus Superior Court resulted in a mistrial. Upon retrial defendant was convicted of second degree murder in each case and received two life sentences, to run consecutively.

In addition to technical evidence dealing with hair and blood, the crux of the State's evidence rested on the testimony of Donald L. Sutton and Herman Baker, Jr., inmates of the North Carolina Department of Corrections, who testified to incriminating statements made to them by the defendant. Both inmates testified they had been in prison with defendant at the White Lake Prison Camp in Bladen County; that defendant, in separate conversations with each witness, said that he had been in prison previously and had escaped from the White Lake Camp; that after his escape he was running through the woods and came to an old house and went in; that a lady came out hollering "what are you doing in my house?" and started screaming; that he knocked her down and stabbed her many times; that another lady came in and he pushed her down and stabbed her many times; that as he was leaving through the back door he spread black pepper around the doorstep to keep the "she-devil spirit" from following him; that white women were she-devils and it was best to kill them all.

The State offered further evidence tending to show that the bodies of the victims were discovered about 4 p.m. on 6 September 1976. The body of Aileen Davis was lying on the floor. There were pools of blood beneath her body, especially around her head. She had stab wounds about her face and neck and her clothing was pulled up around her waist exposing her lower torso. The body of Josephine Davis had stab wounds about the face and neck and there were heavy concentrations of blood about her face and beneath her upper torso. Her clothing was also pulled up exposing the lower half of her body. Heavy spatterings of blood were observed on the wall, floor and on a green refrigerator located next to the head of Aileen Davis. There were blood spat-

terings on areas of the floor over the entire living room and bloody footprints were found inside the kitchen leading toward the back door.

Phillip Little, an investigator for the Bladen County Sheriff's Department, testified that after defendant was apprehended in Dillon, South Carolina, and returned to Bladen County, he and another officer took defendant back to the White Lake Prison Camp on 12 September 1976. The officers stopped their vehicle on the highway directly in front of the Davis residence and sat there for a few minutes. Defendant had not been told the house in view was the Davis home. Defendant was in handcuffs with his hands in front of him. He raised both hands and pointed to the Davis house and stated: "A black man did not kill those two women. A white man did it. A black man wouldn't cut them up like they were." This statement was volunteered and seemingly spontaneous.

Defendant testified as a witness in his own behalf. He said he escaped from the White Lake Prison Camp on 5 September 1976 by jumping over the fence in the afternoon and hiding nearby until it got dark; that he then walked the highway facing traffic to Elizabethtown, stepping into the shadows and bushes when a car would approach. When he got to Elizabethtown he took some clothing from a clothes line to wear in lieu of his prison garb, then stole a car and drove to Fayetteville. He denied killing the two Davis women and denied hating white women. When recaptured later in South Carolina, he said he was returned to prison and placed in a cell with Donald Sutton. He denied having any conversation with Sutton about killing the two women and denied talking with Herman Baker, Jr. about killing the women or about anything else.

Additional evidence necessary to an understanding of defendant's assignments of error will be narrated in the opinion.

*Rufus L. Edmisten, Attorney General, by Lester V. Chalmers, Jr., Special Deputy Attorney General, for the State.*

*Reuben L. Moore, Jr., for defendant appellant.*

HUSKINS, Justice.

Pursuant to G.S. 15A-903 defendant filed a pretrial motion "for information necessary to receive a fair trial" and a motion to

inspect, examine, and test physical evidence. By his first assignment of error defendant asserts the trial court erred (a) in denying his motion for the names of other prison inmates who would testify to incriminating statements defendant had allegedly made to them; and (b) in failing to require the prosecution to furnish to defendant, prior to trial, photographic slides of the bodies of the two victims.

[1] We find no merit in this assignment. Defendant, in compliance with G.S. 15A-903(a)(2), was advised by the prosecution that incriminating statements he had made to other unnamed inmates would be used against him at trial. Moreover, during the first trial of this case Donald L. Sutton and Herman Baker, Jr., inmates of the North Carolina Department of Corrections, testified for the State and gave substantially the same testimony as they gave in this trial. Each of these witnesses was cross-examined at length. Defendant therefore had their names as well as a copy of their prior recorded testimony. In any event, G.S. 15A-903 affords an accused no right to discover the names and addresses of the State's witnesses and does not require the State to furnish the accused a list of the witnesses who will be called to testify against him. *State v. Smith*, 291 N.C. 505, 231 S.E. 2d 663 (1977).

[2] With respect to the motion to inspect the physical evidence, we note the trial court, after a hearing, allowed defendant to examine and inspect all photographs taken by the State in the investigation of the accusations against him. This included State's Exhibits Nos. 13-A through 13-D and 14-A through 14-E. These exhibits were photographic slides of the bodies of the two deceased women. Defendant complains the slides were not furnished to him prior to trial. Yet the record discloses that Dr. Reavis testified at the first trial and illustrated his testimony by the use of these exhibits. Defendant viewed the slides at the first trial and his counsel cross-examined Dr. Reavis concerning them. Thus defendant had examined the slides and had the benefit of the doctor's prior recorded testimony during his preparation for this trial. We perceive nothing prejudicial by the failure to produce these slides prior to trial. Defendant's first assignment of error is overruled.

[3] Defendant's second assignment of error is grounded on the contention that State's Exhibits Nos. 13-A through 13-D and 14-A

through 14-E, photographic slides of the bodies of Josephine Davis and Aileen Davis, respectively, were grossly inflammatory and their introduction denied defendant a fair and impartial trial.

We note that the photographs, four of one body and five of the other, were made 9 November 1976 after the bodies had been exhumed by the State for the second autopsy. The photographs generally illustrate the various knife wounds inflicted upon the bodies of the two victims. Admittedly, the slight decomposition of the bodies since the date of death—6 September 1976—made the photographs in question somewhat more gory and gruesome than would otherwise have been true. Even so, the murder scene itself was a gory sight. There were pools of blood beneath and around the bodies. Each body bore stab wounds about the face and neck with heavy concentrations of blood in the wound areas. The wall and floor and a nearby refrigerator bore heavy spatterings of blood. Normal human revulsion could be accentuated but little by viewing the photographs under attack.

It is settled law that the unnecessary use of inflammatory photographs in excessive numbers solely for the purpose of arousing the passions of the jurors may deny defendant a fair and impartial trial. *State v. Mercer*, 275 N.C. 108, 165 S.E. 2d 328 (1969); *State v. Foust*, 258 N.C. 453, 128 S.E. 2d 889 (1963). It is equally well settled that photographs are admissible to illustrate the testimony of a witness and their admission for that purpose under proper limiting instructions is not error. *State v. Crowder*, 285 N.C. 42, 203 S.E. 2d 38 (1974), *death sentence vacated*, 428 U.S. 903 (1976); *State v. Cutshall*, 278 N.C. 334, 180 S.E. 2d 745 (1971). *See generally* 1 Stansbury, N.C. Evidence § 34 (Brandis Rev. 1973). The fact that a photograph depicts a horrible, gruesome or revolting scene does not render it incompetent. When properly authenticated as a correct portrayal of what it purports to show, a photograph may be used by the witness to illustrate his testimony, and its admission for that purpose is not error. *State v. Duncan*, 282 N.C. 412, 193 S.E. 2d 65 (1972); *State v. Atkinson*, 275 N.C. 288, 167 S.E. 2d 241 (1969).

Applying the foregoing principles to the photographs challenged by this assignment, we perceive no prejudicial error, although the State likely could have illustrated the medical testimony fully as well with fewer pictures. Excessive use of

photographs is not favored. "What constitutes an excessive number of photographs must be left largely to the discretion of the trial court in the light of their respective illustrative values. The photographs in the present case were not merely repetitious. They portrayed somewhat different scenes and we find in the use of the total number no abuse of discretion." *State v. Dollar*, 292 N.C. 344, 233 S.E. 2d 521 (1977). So it is here. This assignment is overruled.

[4]  The two victims were killed on 6 September 1976 and their bodies were exhumed and examined by Dr. Reavis on 9 November 1976 incident to the second autopsy. Dr. Reavis was then permitted, over objection, to testify concerning the second autopsy he performed and to give his opinion as to the cause of death. Defendant contends that evidence concerning the second autopsy, performed sixty-four days after burial, was too remote to have any probative value and was erroneously admitted.

Phillip Little, an investigator with the Bladen County Sheriff's Department, was permitted to testify, over objection, that on 6 September 1976, while investigating the murders, he first saw a can of black pepper lying on the floor in the hall that leads to the rear exit of the Davis home. He attached no particular significance to it until Herman Baker, Jr., told him in February 1978 that defendant Sledge said he escaped from the White Lake Prison Unit, stabbed two women, and "sprinkled black pepper around the back door so that the she-devils' spirits could not follow him." Officer Little further testified that the pepper can thereupon became a part of his official file and that it was in the same condition at trial as it was when he found it. Defendant contends that evidence concerning the pepper can was too remote to have any probative value and was erroneously admitted. Admission of evidence concerning the second autopsy and evidence concerning the pepper can constitute defendant's third assignment of error.

In *State v. Porth*, 269 N.C. 329, 153 S.E. 2d 10 (1967), we held that a medical expert may testify from his autopsy, even though the autopsy was made five months after the death of the deceased, and give his opinion as to the cause of death. The delay in making the autopsy goes to the weight of the testimony rather than its competency.

State v. Sledge

Defendant also complains that the trial court erred in refusing to allow him to cross-examine Dr. Reavis regarding the first autopsy. Defendant had a right to such cross-examination and the court erred in refusing to allow it, but we cannot know whether the ruling was *prejudicial* because defendant failed to place in the record the answers the witness would have given had he been permitted to do so. "The record does not show what the State's witnesses . . . would have said had they been permitted to answer the questions. Therefore we cannot know whether the rulings were prejudicial. The burden is on appellant not only to show error but to show *prejudicial error. State v. Kirby*, 276 N.C. 123, 171 S.E. 2d 416; *State v. Jones*, 249 N.C. 134, 105 S.E. 2d 513; *State v. Poolos*, 241 N.C. 382, 85 S.E. 2d 342." *State v. Robinson*, 280 N.C. 718, 187 S.E. 2d 20 (1972). Moreover, there is no reason to believe that the excluded cross-examination concerning the first autopsy would have produced a different result. Unless a different result likely would have ensued had the evidence been admitted, its exclusion must be regarded as harmless. G.S. 15A-1443(a); *State v. Barbour*, 278 N.C. 449, 180 S.E. 2d 115 (1971), *cert. denied*, 404 U.S. 1023 (1972); *State v. Williams*, 275 N.C. 77, 165 S.E. 2d 481 (1969).

With respect to the admission of the pepper can and the testimony concerning it, the general rule is that any object which has a relevant connection with the case is ordinarily admissible in evidence. "Any evidence which is relevant to the trial of a criminal action is admissible." *State v. Winford*, 279 N.C. 58, 181 S.E. 2d 423 (1971). *Accord, State v. Bass*, 280 N.C. 435, 186 S.E. 2d 384 (1972); *State v. Johnson*, 280 N.C. 281, 185 S.E. 2d 698 (1972); *State v. Perry*, 275 N.C. 565, 169 S.E. 2d 839 (1969). *See generally* 1 Stansbury, N. C. Evidence § 118 (Brandis Rev. 1973). The relevancy of evidence concerning the pepper can is quite apparent in light of defendant's statement to the witness Baker that he sprinkled pepper around the back door. Officer Little testified that the can had been in his care, custody and control from the time he found it on 6 September 1976 until he brought it into court at the first trial in May and that it was "in the same condition now as it was at the time" he found it. Such evidence was properly admitted. Here again, the delay of seventeen months in ascertaining its relevancy goes to the weight of the evidence rather than its competency. There is no merit in either prong of defendant's third assignment, and it is therefore overruled.

[5]   Defendant requested the court to instruct the jury as follows:

"Circumstantial evidence is sufficient to justify a conviction when, and only when, the circumstances proved are consistent with the hypothesis that the accused is guilty, and at the same time are inconsistent with the hypothesis that he is innocent and with every other reasonable hypothesis except that of guilt. In brief, if all the material circumstances proven are of such a nature and so connected or related as to point unerringly to guilt, and to exclude to a moral certainty every other reasonable hypothesis except that of guilt, a conviction is warranted. If all the circumstances taken together are as compatible with innocence as with guilt, the jury should acquit. (Unless the circumstantial evidence, as the jury finds it to be, meets the above standard to convict, the jury should acquit.)"

The trial judge gave the requested instruction except that portion which appears in parentheses. In lieu of the omitted portion in parentheses the judge charged as follows:

"Now, it is for you, the members of the jury, to determine the weight and credit, if any, to be given to the circumstances shown by the evidence and the inferences that are to be drawn therefrom. As I have said, before you may rely upon circumstantial evidence to find the defendant guilty, you must be satisfied beyond a reasonable doubt that not only is circumstantial evidence relied upon—that not only is the circumstantial evidence which is relied upon by the State consistent with the defendant being guilty, but that it is inconsistent with him being innocent."

Defendant's fourth assignment of error is grounded on the court's failure to charge the omitted portion in parentheses and giving the additional charge in lieu thereof.

The requested charge, including the portion in parentheses, is taken verbatim from *State v. Lowther*, 265 N.C. 315, 144 S.E. 2d 64 (1965). In *Lowther*, however, we stressed that "[n]o set form of words is required which the court must use to convey to the jury the rule relating to the degree of proof required for conviction on circumstantial evidence in a criminal case." *Id.* Moreover, the trial court is not required to give a requested instruction in

the exact language of the request. *State v. Monk,* 291 N.C. 37, 229 S.E. 2d 163 (1976). When the request is correct in itself and supported by the evidence in the case, it suffices if the requested instruction is given in substance. *State v. Davis,* 291 N.C. 1, 229 S.E. 2d 285 (1976); *State v. Beach,* 283 N.C. 261, 196 S.E. 2d 214 (1973); *State v. Howard,* 274 N.C. 186, 162 S.E. 2d 495 (1968). We think a fair appraisal of the charge as given impels the conclusion that it was correct and substantially in accord with defendant's request. We perceive no reasonable cause to believe that the jury was misled or misinformed by the charge as given. Defendant's fourth assignment is overruled.

Defendant's fifth assignment is grounded on his contention that the court permitted the prosecutor, over objection, to ask a long series of leading questions. We have examined them all and find the questions to be innocuous and entirely harmless. Although most of them are leading in that they may be answered yes or no, 1 Stansbury, supra, § 31, it is within the sound discretion of the trial judge to determine whether such questions shall be permitted; and in the absence of abuse, the exercise of such discretion will not be disturbed on appeal. *State v. Britt,* 291 N.C. 528, 231 S.E. 2d 644 (1977); *State v. Greene,* 285 N.C. 482, 206 S.E. 2d 229 (1974). If the testimony is competent and there is no abuse of discretion, defendant's exception thereto will not be sustained. *State v. Young,* 291 N.C. 562, 231 S.E. 2d 577 (1977); *State v. Brunson,* 287 N.C. 436, 215 S.E. 2d 94 (1975). Here, the testimony was competent, no abuse of judicial discretion is shown, and defendant has not been prejudiced. We find no merit in defendant's fifth assignment of error.

[6] Defendant contends the court erred by permitting the district attorney to use various photographs as substantive evidence and without laying a proper foundation for their use for any purpose. This constitutes defendant's sixth and final assignment of error.

This assignment challenges the competency of nine photographs and a diagram or sketch purporting to show the floor plan of the Davis residence. The record reveals that the sketch and the photographs were consistently offered and admitted for the purpose of illustrating the testimony of various witnesses and the jury was so instructed. These exhibits were all competent for illustrative purposes. A witness may use sketches and diagrams,

on a blackboard or otherwise, to illustrate his testimony. *State v. Lee,* 293 N.C. 570, 238 S.E. 2d 299 (1977); *State v. Cox,* 271 N.C. 579, 157 S.E. 2d 142 (1967); 1 Stansbury, supra, § 34. As to the photographs, "[w]e have said many times that photographs, though gruesome, which fairly portray a scene observed by a witness and which can be used to illustrate his testimony may be admitted in evidence." *State v. Madden,* 292 N.C. 114, 232 S.E. 2d 656 (1977); *State v. Chance,* 279 N.C. 643, 185 S.E. 2d 227 (1971), *death sentence vacated,* 408 U.S. 940 (1972); *State v. Westbrook,* 279 N.C. 18, 181 S.E. 2d 572 (1971), *death sentence vacated,* 408 U.S. 939 (1972); *State v. Cutshall, supra; State v. Moore,* 276 N.C. 142, 171 S.E. 2d 453 (1970); *State v. Atkinson, supra; State v. Porth, supra.* The photographs under discussion depicted the refrigerator in the Davis home, a corner of the living room and the south wall of the Davis home, the bodies of Josephine and Aileen Davis, an exterior view of the Davis home, and a 1969 Chevrolet automobile defendant allegedly stole following the murders. When each of these exhibits was tendered for illustrative purposes, the painstaking trial judge gave an appropriate limiting instruction and again, in the charge, instructed the jury that the photographs and diagrams were admitted into evidence solely to illsutrate the testimony of the witnesses and for no other purpose. In each instance the witness used the exhibit to illustrate his testimony. Thus it appears that the rules of evidence were meticulously followed. Defendant's sixth assignment of error is overruled.

We conclude that defendant had a fair trial free from prejudicial error. The verdicts and judgments must therefore be upheld.

No error.