State v. Letterlough

STATE OF NORTH CAROLINA v. JAMES HARVEY LETTERLOUGH

No. 8119SC198

(Filed 15 September 1981)

1. **Criminal Law § 91— speedy trial—delays caused by mental examination, State's continuance, and withdrawal of counsel**

    Time delays in trial caused by (1) a 20-day continuance requested by the State to prepare for trial, (2) a mental examination for defendant, and (3) appointment and preparation of new counsel for defendant were properly excluded from computation of the statutory speedy trial period. Had defendant been concerned that his right to a speedy trial was being violated, he should have insisted on an earlier trial date rather than agreeing to a later one. G.S. 15A-701(b)(1), (7).

2. **Criminal Law § 86.8— exclusion of testimony—failure to show prejudice**

    While cross-examination of a State's witness as to whether he had been charged in the present case should have been allowed for the purpose of showing bias, the exclusion of the witness's answer was not prejudicial error as (1) the record was devoid of any clue as to what the witness's answer would have been and (2) a potential inference of bias by the witness was negated through other questions.

3. **Criminal Law § 34.4— inference of earlier offense—admissibility of testimony**

    Testimony elicited on redirect that a witness first met defendant when the witness was "on the chain gang" was admissible even though it incidentally bore on defendant's character as it was relevant for a purpose other than proving character.

APPEAL by defendant from *Albright, Judge.* Judgment entered 2 October 1980 in Superior Court, RANDOLPH County. Heard in the Court of Appeals 2 September 1981.

Defendant was indicted for the murder of Sandra Glasgow Fox (aka Sandra Fox Letterlough) on 4 March 1980. From a verdict of guilty of murder in the second degree, defendant appeals.

The evidence disclosed that the defendant, James Harvey Letterlough, had known Sandra Fox for approximately three years. The two worked at the same company and often rode to work together. For some time prior to January 1980 Sandra had been living with the defendant. However, early in January she left him. At trial Sandra's sister testified that on 17 January 1980 the defendant had come to the family home where Sandra was living. He ordered Sandra to "get her stuff" and stated that "he would make her go with him."

On the morning of 22 January 1980, defendant and two other men picked Sandra up for work. This was the last time she was seen alive by members of her family.

State's witness David Ledwell testified that one evening in late January the defendant came to his home. Defendant informed Mr. Ledwell that he had killed Sandra and that he needed Ledwell's help to bury the body. Defendant had a gun in his belt. Under the circumstances Ledwell decided that he should comply with defendant's demand. He accompanied the defendant to an abandoned house near defendant's home. Sandra's naked body was lying on the ground. Ledwell saw blood on her side. Using a pick and shovel brought by defendant, the pair dug a shallow grave and placed Sandra's body in the grave. After defendant had poured gasoline over her, they covered the body with dirt. Defendant informed Ledwell that he had killed Sandra because he had "caught her running around" on him. Several days later defendant told Ledwell that he had thrown the pick and shovel in the woods and buried Sandra's clothes.

Approximately three weeks later Mr. Ledwell, worried about the incident, related his experience to several friends. He took them to the abandoned house and pointed out the grave. The police were called and the body removed. An autopsy, performed 15 February 1980, revealed that death resulted from two stab wounds in the left chest. The medical examiner estimated that Sandra had been dead about three weeks. The pick and shovel and Sandra's clothes were recovered.

Defendant offered no testimony on his own behalf.

*Attorney General Edmisten, by Assistant Attorney General Elizabeth C. Bunting, for the State.*

*Oldham & Alexander, by C. Pierre Oldham, for defendant appellant.*

MARTIN (Harry C.), Judge.

Defendant in his brief presents three assignments of error for our consideration.

[1] First, he assigns as error the trial court's denial of his motion to dismiss the indictment for failure to grant a speedy trial pursuant to N.C.G.S. 15A-701 and 15A-703.

The pertinent dates are as follows:

| 5 March 1980 | —Indictment |
|---|---|
| 28 April 1980 | —State moved for a continuance pursuant to N.C.G.S. 15A-701(b)(7). Motion granted. Continuance set to end 19 May 1980, next regularly scheduled session of Randolph County Criminal Superior Court. |
| 14 May 1980 | —Defendant moved for commitment to a state mental health facility for a mental exam. Motion granted 15 May 1980. |
| 21 May 1980 | —Defendant was returned from Dorothea Dix Hospital. |
| 2 June 1980 | —Next regularly scheduled session of Randolph County Criminal Superior Court. |
| 2 July 1980 | —Defendant's privately retained counsel moved to withdraw. Request granted 3 July 1980. |
| 14 July 1980 | —Attorney appointed for defendant. Defense counsel agreed that 8 September or 29 September 1980 would be a satisfactory trial date, allowing both parties time for trial preparation. |
| 29 September 1980 | —Trial began. |

In his order on defendant's motion to dismiss pursuant to N.C.G.S. 15A-701 and 15A-703, Judge Albright found, as a matter of law, that the running of time for purposes of the statute began 5 March 1980 and concluded on 28 September 1980. The total time between indictment and trial was thus 207 days, well outside the 120 days mandated in the statute.

Judge Albright excluded from computation the period between 28 April and 2 June 1980. Defendant assigns as error the exclusion of the period between 28 April and 19 May 1980, the

time allowed on the state's motion for a continuance. Defendant does not argue against the exclusion of time from 14 May to 21 May 1980 while he was undergoing mental examination. At the outset, then, the 19 May date is of no relevance. Defendant was confined at Dorothea Dix hospital on that date and could not be present for trial. We will, however, discuss the appropriateness of Judge Albright's excluding the full period between 28 April and 2 June 1980.

N.C.G.S. 15A-701(b)(7) provides that the time granted for a continuance is to be excluded where the judge finds that the ends of justice served by the continuance outweigh the best interests of the public and the defendant in a speedy trial. It is not the purpose of the Speedy Trial Act to force the state to trial absent essential witnesses or proper preparation. "Section 15A-701(b)(7) should be given a liberal and commonsense construction to avoid injustice either to the defendant or to the public. The safeguard in the Act requiring that the judge set forth in the written record his reasons for granting the continuance will prevent abuse of judicial discretion." Price, *The North Carolina Speedy Trial Act,* 17 Wake Forest L. Rev. 173, 203 (1981).

Judge Lupton, in granting the continuance, found that a twenty-one day extension of time was both reasonable and necessary for trial preparation. We agree.

Under N.C.G.S. 15A-701(b)(1)(a), any period of delay resulting from a mental examination is excluded in computing the time within which trial must begin. In *State v. Harren,* 302 N.C. 142, 273 S.E. 2d 694 (1981), the Court held that for purposes of allowing a defendant to undergo mental examination, the time excludable from computation runs from the date of entry of the order of commitment to the date the mental examination report becomes available to both the defendant and the state. The record does not indicate when the report became available. However, Judge Albright was clearly correct in holding that the period of exclusion should run until 2 June 1980, the date of the next regularly scheduled session of criminal superior court after defendant's release on 21 May. In fact, had the report not been available on 2 June, a further exclusion of time would have been warranted. *State v. McCoy,* 303 N.C. 1, 277 S.E. 2d 515 (1981). To do otherwise would deprive the defendant of the benefit of the results of the medical examination he requested.

Defendant would allow for the exclusion of some period of time for new counsel to be appointed and to prepare his defense. Defendant objects specifically to the exclusion of time between 8 and 29 September.

In *State v. Bradsher*, 49 N.C. App. 507, 271 S.E. 2d 915 (1980), this Court held that the trial court correctly excluded from computation the time during which withdrawal of counsel and appointment of new counsel took place. In *State v. Rogers*, 49 N.C. App. 337, 271 S.E. 2d 535 (1980), this Court held that the time necessary for acquiring and preparing new counsel was appropriately omitted under N.C.G.S. 15A-701(b)(1).

Defendant is entitled to competent and effective representation of counsel. *State v. Hensley*, 294 N.C. 231, 240 S.E. 2d 332 (1978). Between 3 July (withdrawal of counsel) and 14 July (appointment of new counsel) defendant was not represented by counsel. Judge Albright could have but did not exclude this period of time in his order.

Two trial dates were suggested as being convenient for both parties, 8 September and 29 September. By stipulation the state and newly appointed defense counsel agreed to a trial date of 29 September. Had defendant been concerned that his right to a speedy trial was being violated, he should have then insisted on trial being set for 8 September. After agreeing to 29 September, he may not now complain of delay resulting from his own reticence while trial dates were being discussed. Moreover, Judge Albright found that seventy-six days represented a reasonable period of time for defense counsel to prepare for trial. We agree.

Thus, from the total of 207 days, Judge Albright excluded from computation a period of thirty-four days (28 April to 2 June 1980) and seventy-six days (14 July to 28 September 1980) for a total of 110 days. He concluded that pursuant to N.C.G.S. 15A-701 and 15A-703, defendant had been awaiting trial for ninety-seven days, well within the 120-day limit specified in the statute for indictments returned before 1 October 1980.

We hold that there is no merit to defendant's contention that Judge Albright erred in denying the motion to dismiss on the ground that a speedy trial was not afforded him.

[2] Defendant next assigns as error the trial court's limiting defendant's cross-examination of David Ledwell. Testimony was as follows:

> Q. Mr. Ledwell, have you ever been charged with anything in this crime?

> MR. KASTNER: OBJECTION, Your Honor.

> THE COURT: SUSTAINED.

It can be assumed that the thrust of defense counsel's question was to challenge the witness's credibility by showing bias; that is, Ledwell's testimony implicated him as an accessory after the fact, a situation which would make the witness potentially susceptible to state pressure or promises. When the purpose of the inquiry is character impeachment, a defendant may not be asked if he has been *charged* with a crime. *State v. Williams*, 279 N.C. 663, 185 S.E. 2d 174 (1971); *State v. Long*, 14 N.C. App. 508, 188 S.E. 2d 690 (1972). However, inquiry into whether a witness is currently under indictment should be permissible when the purpose of the inquiry is to show bias. The absolute exclusion of testimony that would clearly show bias may constitute reversible error. 1 Stansbury's N.C. Evidence § 45 (Brandis rev. 1973); *State v. Roberson*, 215 N.C. 784, 3 S.E. 2d 277 (1971).

We find, however, that while cross-examination of Ledwell concerning any charges brought against him in the case should have been allowed, the error was not prejudicial and does not merit a new trial.

This record is devoid of any clue as to what Ledwell's answer would have been had the state's objection not been sustained. The defendant offers the case of *Alford v. United States*, 282 U.S. 687, 75 L.Ed. 624 (1939), for the proposition that the answer to defense counsel's question is immaterial. This may be the case in determining whether testimony was properly excluded at the time of the objection. However, in order for the propriety of the exclusion to be reviewed on appeal, "the record must sufficiently show what the purport of the evidence would have been." Stansbury, *supra*, § 26. This the defendant has failed to do and the Court cannot, without more, determine that the exclusion was prejudicial. *State v. McCoy, supra; State v. Sledge*, 297 N.C. 227, 254 S.E. 2d 579 (1979).

Moreover, defense counsel was permitted, without objection, to ask Ledwell if he had been promised anything for his testimony and whether the witness himself had committed the crime for which the defendant had been charged. Ledwell replied in the negative to both questions, thus overcoming any potential inference of bias.

[3] Finally, defendant assigns as error the trial court's refusal to grant his motion for mistrial based on the following testimony elicited by the state on redirect of witness Ledwell:

Q. Now, in answer to Mr. Oldham's question, you said that you had known Mr. Letterlough for about ten or twelve years?

A. Yeah. Somewhere in there.

Q. Where were you when you were—when you first met Mr. Letterlough?

A. When I first met Harvey?

Q. Where were you?

A. When I first met him and I knowed him good, I was on the chain gang.

Q. All right, now—

MR. OLDHAM: OBJECTION, Your Honor and MOVE TO STRIKE.

At the threshold of defendant's assignment of error is the rule that unless the accused testifies as a witness or produces evidence of good character to repel the charges against him, the state may not introduce evidence of defendant's bad character. Stansbury, *supra*, § 104. There is, however, an exception to this rule. Evidence relevant for some purpose other than proving character may be introduced although it incidentally bears on defendant's character. *State v. Cherry*, 298 N.C. 86, 257 S.E. 2d 551 (1979); *State v. Fulcher*, 294 N.C. 503, 243 S.E. 2d 338 (1978); *State v. Watson*, 287 N.C. 147, 214 S.E. 2d 85 (1975); *State v. Jackson*, 284 N.C. 321, 200 S.E. 2d 626 (1973); *State v. McClain*, 240 N.C. 171, 81 S.E. 2d 364 (1954).

We note first that Ledwell's testimony that *he* was on the chain gang when he first met defendant is not direct evidence

that defendant himself was on the chain gang. Moreover, the evidence was not offered to show defendant's propensity to commit a crime similar to the one for which he was on trial. The state elicited the information to establish the existence of a relationship which would make plausible defendant's coming to Ledwell for help to bury the body. Evidence incompetent for one purpose may be admissible for another proper purpose. Stansbury, *supra*, § 79.

Nor was the inference arising from the testimony of such force as to prejudicially influence the jury in their consideration of defendant's innocence or guilt. The burden on the appellant is not only to show error, but to show prejudicial error. *State v. Sledge, supra; State v. Williams*, 275 N.C. 77, 165 S.E. 2d 481 (1969). The record is replete with competent evidence from which the jury could find the defendant guilty.

After carefully examining the record on appeal, we conclude that the defendant received a fair trial, free from prejudicial error.

No error.

Judges MARTIN (Robert M.) and BECTON concur.