STATE OF NORTH CAROLINA v. ROBERT ELIMU MOREHEAD

No. 8218SC1071

(Filed 17 May 1983)

1. **Forgery § 2.1— indictment for uttering—allegation of intent to defraud**

   An indictment for uttering a forged check sufficiently alleged that defendant uttered the check with the intent to defraud where it appears that the words "with the intent to defraud" as they appear in the indictment modify the words "did utter and publish."

2. **Criminal Law § 113.7— giving requested instructions on aiding and abetting**

   The trial court in a prosecution for uttering forged checks in effect gave defendant's requested instructions on aiding and abetting which were supported by the evidence.

3. **Criminal Law § 91— statutory speedy trial period—exclusion of times for continuances and motion to discharge counsel**

   Although 153 days elapsed between the time of defendant's arrest and his trial, the 120-day statutory speedy trial period was met when 45 days for two continuances and four days between defendant's request for the discharge of

State v. Morehead

his counsel and the court's order discharging counsel are excluded from the 153-day period.

4. **Indictment and Warrant § 2— voluntary dismissal with leave—reinstatement of indictments by prosecutor**

Where defendant was indicted on 5 January 1981, the State took a voluntary dismissal with leave on 27 April 1981 because defendant could not be found, and defendant was arrested on 15 October 1981, the prosecutor could properly reinstate the indictments on 4 January 1982 without further action by the grand jury. G.S. 15A-932 and G.S. 15A-701(b)(11).

5. **Searches and Seizures § 40— search under warrant—item not listed in warrant—plain view doctrine**

Although a typewriter was not listed as an item to be seized in a warrant to search for stolen goods, the typewriter was properly seized under the plain view doctrine during a search of defendant's residence pursuant to the warrant where the affidavit for the warrant contained information that a codefendant had said that a manual typewriter was used to fill out forged checks at defendant's residence, and the typewriter was thus evidence of another crime.

APPEAL by defendant from *Helms, Judge*. Judgment entered 19 March 1982 in Superior Court, GUILFORD County. Heard in the Court of Appeals 12 April 1983.

Defendant was indicted on four charges of forgery and four charges of uttering a forged instrument. Four forged checks were uttered by cashing and placing them in the channels of commerce by Jo Laverne Young Aikens in Greensboro on 16 October 1980. Defendant Morehead, Dwight Leath and Tony Phillips participated with Aikens. Aikens testified as a State's witness. Defendant Morehead was convicted of 4 charges of uttering forged instruments and appeals.

*Attorney General Rufus L. Edmisten by Special Deputy Attorney General T. Buie Costen for the State.*

*Graham, Cooke, Miles & Bogan by Donald T. Bogan for defendant appellant.*

BRASWELL, Judge.

[1] Defendant's first assignment of error is to the failure of the court to allow his motion to dismiss the indictments on the counts of uttering forged checks on the ground that each indictment fails to allege that defendant uttered the check with the intent to defraud another. He contends this essential element is missing

and that therefore the indictment is void. He relies principally upon *State v. Hill*, 31 N.C. App. 248, 229 S.E. 2d 810 (1976).

As the four indictments are substantially identical, we excerpt and examine the challenged part of one as being dispositive of the issue. A copy of the front and back of each check in the amount of $175.58 was attached to the indictment. All checks were dated 16 October 1980 and drawn on the account of Eastside Grocery at First Citizens Bank & Trust Company. The sample indictment follows:

". . . [W]ittingly and unlawfully and feloniously did utter and publish as true a certain false, forged and counterfeited bank check, to which said bank check had been falsely forged the name of Faith Cooper as Payee, and the name of Lee V. Moore, Jr., as Maker to said bank check so that said bank check appeared to be genuine, and which said forged bank check is as follows that is to say: As per copy of check, marked Exhibit A, attached hereto and made a part hereof as though fully set out herein, with intent to defraud __he__, the said Robert Elimu Morehead at the time __he__ so uttered and published the said false, forged and counterfeited bank check then and there well knowing the same to be false, forged and counterfeited against the form of the statute in such case made and provided, and against the peace and dignity of the State."

In *State v. Hill, supra,* at 249-50, 229 S.E. 2d at 811, the indictment reads:

" '. . . [W]ittingly unlawfully and feloniously did utter and publish as true a certain false, forged, and counterfeit check, which said false, forged and counterfeit check is as follows: A check drawn upon the account of Craven Steel Company, Inc., Route #11, Box 430, Greensboro, North Carolina, dated October 29, 1974, check #2394 payable to the order of Billy G. Hill in the amount of $123.33, and drawn upon The Northwestern Bank, Greensboro, North Carolina, upon which the signature of Betty Bush had been forged with the intent to defraud, he the said Billy Gray Hill, at the time he so uttered and published the said false, forged, and counterfeit check, then and there well knowing the same to be false, forged and counterfeit.' "

State v. Morehead

We think *Hill* is clearly distinguishable. The court in *Hill* said, "Nowhere does the indictment allege that defendant uttered the check with the intent to defraud others. The words 'with the intent to defraud,' as they appear in the indictment, modify the word 'forged' and are irrelevant to the distinct charge of uttering." *Id.* at 250, 229 S.E. 2d at 811. In our case the checks are not described in the body of the indictment but are attached and incorporated by reference. The phrase "with intent to defraud" is set off by a comma. Logic and reason interpret the phrase to modify its ultimate verb. In *Hill*, the phrase modified the preceding word "forged," which made the element defective. This assignment of error is without merit (even though someday some-. one should draft a less complex form).[1] The indictment here was sufficient to inform defendant of the charge, to enable the court to proceed to judgment, and to bar further prosecution on the same offense.

[2] The second assignment of error challenges the correctness of the jury instruction concerning aiding and abetting. Defendant contends he was not present when a codefendant passed the checks and that it was error for the trial court to fail to instruct the jury that they must find that he was actually or constructively present when the checks were passed.

The group planning of the offense took place in the defendant's apartment. The checks were forged by others in the apartment with the defendant's knowledge, and preparation for cashing the checks began there. Aikens, Leath, Phillips and the defendant left the apartment and traveled by automobile to four business establishments. Aikens went alone into each business. While Aikens was cashing each check, the others remained outside in the automobile, with defendant in the back seat. The auto was parked close to each establishment: J. C. Penney's, directly in front; Food Town, within 25 feet; Northgate Inn, within 35-40 feet;

---

1. We share the following sagacity from the State's brief:

"As for defendant's argument concerning the number of sentences, words, commas and colons in the indictments as proof of vagueness, it is respectfully submitted that exclusive of description, the usual fee simple warranty deed is prepared as a single sentence containing in excess of 230 words, 18 commas, 4 semi-colons and 2 colons. That deed is historically cited as a model of clarity and expression."

Wig World, in a parking lot across the street. Aikens testified that the defendant shared in the proceeds of her adventure.

When the group left the house, the checks had not been signed. After all were in the automobile, the checks were given to Aikens from someone in the back seat. During the time, and before going to Northgate Inn, the defendant suggested that "we try motels and hotels, because he said if you rent a room for more than one day, they will always cash the check." When this suggestion was made, Leath had been dropped off, and only Aikens, Phillips and defendant were in the car.

After full comparison and examination of the defendant's request for special instructions on aiding and abetting and of that portion of the charge on this same subject, we find this assignment of error to be without merit and that it would serve no purpose to quote from the requested instruction and from the charge. While the trial judge did not use the exact language as phrased by defendant, the judge correctly covered the substantive law and applied it to the evidence in his charge. *State v. Sledge*, 297 N.C. 227, 234-35, 254 S.E. 2d 579, 584-85 (1979). Although defendant's brief says: "The crime of an aiding and abetting (principle in the second degree) is a *lesser* included offense of the principal felony and a defendant may be convicted as such in an indictment charging the principal offense," (emphasis added), we point out that "aiding and abetting" is not a separate crime, is not a lesser offense, and does not require a separate issue. Where one aids and abets another, he is guilty as a principal. *State v. Holloway and State v. Jones*, 7 N.C. App. 147, 171 S.E. 2d 475 (1970). The subject of the presence of defendant and his participation with Aikens in the crime in the role of one aiding and abetting was amply covered by the trial judge. Where supported by the evidence, the defendant's requested instructions were given.

Defendant's reliance upon *State v. Glaze*, 37 N.C. App. 155, 245 S.E. 2d 575 (1978), is not well founded. While *Glaze* relied upon *State v. Lyles*, 19 N.C. App. 632, 635, 199 S.E. 2d 699, 701, *cert. denied*, 284 N.C. 426, 200 S.E. 2d 662 (1973), for the proposition that "[i]n order to determine whether a defendant is present, the court must determine whether 'he is near enough to render assistance if need be and to encourage the actual perpetration of the felony,'" the reported facts of *Glaze* differ substantially from

this defendant's conduct. In *Glaze*, codefendant Hart stayed inside the motel room where the parties met and did not go to the pharmacy where the crime was committed and did not participate in the split of the drugs seized. Defendant Morehead, in our case, went with the group in an automobile to knowingly aid, abet, and encourage Aikens to utter known forged checks, and he shared in the fruits of Aikens' adventure. While in the automobile at each business establishment, Morehead was near enough to render assistance to Aikens if need be and his participation with the others in the forgery in his apartment, riding to the scene, handing the checks to Aikens in the auto, and aiding in providing a getaway ride, all encouraged the actual perpetration of this felony.

[3] The fourth assignment of error alleges that the trial court erred in denying defendant's motion to dismiss for lack of a speedy trial, G.S. 15A-701 *et seq.* We disagree.

While the date of offenses was 16 October 1980, the defendant was never arrested until 15 October 1981. Jury trial began 17 March 1982. One Hundred Fifty-three (153) days elapsed.

Counsel does not contest the exclusion of 25 January 1982 through 22 February 1982 because he obtained a continuance to prepare for trial. This is 28 days.

On 16 October 1981, the day after his arrest, defendant obtained court-appointed counsel, a public defender. On 4 January 1982, defendant, by letter to Superior Court Judge Charles Kivett, requested that the public defender be discharged for reasons stated. On 5 January 1982 Judge Kivett ordered a hearing on the defendant's request, which was heard by Judge W. Douglas Albright on 8 January 1982. At that hearing the public defender joined in the motion of the district attorney to continue the trial of these cases retroactive from 16 October 1981 until 25 January 1982. The defendant had urged the public defender to get the cases tried as soon as possible. Finding a conflict of interest between counsel and defendant, Judge Albright discharged the public defender, appointed new counsel, and signed an order continuing the trial from 16 October 1981 through 25 January 1982. The time of 4 days from defendant's request for discharge of his attorney of 4 January 1982 through 8 January 1982, the date of the order, is clearly excludable. *State v. Rogers*, 49 N.C.

App. 337, 271 S.E. 2d 535, *disc. rev. denied,* 301 N.C. 530, 273 S.E. 2d 464 (1980). One hundred fifty-three (153) days, minus 28 days, minus 4 days, leaves 121 days. We also hold that the 17 days from 8 January 1982 to 25 January 1982, which formed a part of Judge Albright's order of 8 January 1982, were properly excludable. When the 17 days are subtracted from the 121 days, it leaves 104 days, and thus the trial began within the 120-day statutory rule. We do not need to discuss or consider the retroactive time from 15 October 1981 to 4 January 1982 in Judge Albright's order.

[4]  We now turn to defendant's third assignment of error. He argues that it was error for the trial court to fail to dismiss the action where the indictments had previously been dismissed with leave by the State and were subsequently reinstated without further action by the grand jury and without adhering to the requirements of G.S. 15A-932.

The facts are that defendant was indicted on 5 January 1981. The defendant could not be found, and on 27 April 1981 the State took a voluntary dismissal with leave. Defendant was not arrested until 15 October 1981. On 4 January 1982 the indictments were reinstated.

We think defendant's argument is amply answered in *State v. Reekes,* 59 N.C. App. 672, 297 S.E. 2d 763 (1982). In *Reekes* the voluntary dismissal with leave was taken on 1 June 1981 for defendant's failure to appear. His arrest was on 29 August 1981. The reinstatement did not occur until 14 December 1981 when the case was placed on the calendar. The *Reekes* court stated: "Once the prosecutor entered a dismissal with leave for nonappearance of the defendant pursuant to G.S. 15A-932, G.S. 15A-701(b)(11) controlled and the speedy trial clock did not resume running against the State until the proceedings were reinstituted against the defendant on 14 December 1981." *Id.* at 676, 297 S.E. 2d at 766. The time of reinstatement was also found to be "reasonable."

[5]  The final assignment of error alleges that the trial court erred in denying the motion to suppress evidence. In the suppression hearing the facts disclosed that a search warrant was issued to search for items taken in a breaking and entering offense at the Eastside Grocery. During the search a manual typewriter and a piece of paper with defendant's name on it in plain view were

also seized. The warrant did not list the typewriter as being a part of the stolen goods. However, in the affidavit portion of the search warrant there was sworn information that codefendant Aikens had said that a manual typewriter had been used to fill out the checks at defendant's residence. Defendant contends that seizure of the typewriter was unlawful "[s]ince the search warrant did not particularly describe a typewriter as an item to be seized." We hold the seizure was lawful under the plain view doctrine as shown in the evidence and that it was not required that the typewriter be described in the search warrant. We also note that the typewriter was not "stolen property" from the Eastside Grocery, but was already in the defendant's apartment at the time of the search. The affidavit did put the officer on notice of another crime, the forging of checks on a typewriter, and the officer was not required to be blind when he was lawfully in the defendant's quarters looking for goods from the breaking and entering.

We hold that the defendant has had a fair trial free from prejudicial error.

No error.

Judges WEBB and WHICHARD concur.